87 N.J. Super. 58 (1964)
208 A.2d 149
HIGHPOINT, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
BLOOMFIELD PLANNING BOARD, ETC., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1964.
Decided December 22, 1964.
*59 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Joseph D. Lintott argued the cause for appellants (Mr. Henry Sant' Ambrogio, of counsel).
Mr. David A. Rappeport argued the cause for respondent.
The opinion of the court was delivered by LEWIS, J.A.D.
Highpoint, Inc., assignee of the Troy Development Corporation (herein interchangeably referred to as plaintiff and developer), instituted proceedings in lieu of prerogative writs to review the action of defendants Bloomfield Planning Board and the Town of Bloomfield relating to a proposed major subdivision of land.
The tract of land sought to be subdivided involves 13 building lots and a street known as Jay Drive. The original plan, *60 marked plan "A," had been submitted to the board on February 13, 1962; it provided for a 50-foot radial cul-de-sac, or turn around, at the west end of Jay Drive, which extended into lots 100 and 101 and lots 111 and 112. The development lots were laid out in such manner that lots 100 to 105 inclusive (numbered from west to east) fronted on the south side, and lots 106 to 112 inclusive (numbered from east to west) fronted on the north side of said drive.
On October 9, 1962 the board conducted a public hearing on plaintiff's application for subdivision approval, at which time there were neighbors in attendance, some in person and others represented by counsel, who expressed concern and made inquiry respecting the anticipated development program. The planning board approved plaintiff's application upon stated terms and conditions which, inter alia, required the subdivider to revise its proposed plan to provide that the temporary cul-de-sac (50-foot radius) be located tangentially to the right side of Jay Drive, no part thereof to extend into the north-side lots 111 and 112 but to be located entirely within the street area and within the south-side lots 100 and 101. It was further provided that when Jay Drive were extended westward the cul-de-sac should be eliminated and also that the developer should provide in such event for the reversion of the excess right of way to the adjoining lot owners.
The resolution of the board effecting the foregoing disposition made specific reference to pertinent sections of the local ordinance "establishing rules, regulations and standards governing the subdivision of land," including section 8, subsection 2(m) thereof, which reads:
"Dead-end streets (culs-de-sac) shall not be longer than 600 ft. and shall provide a turn around at the end with a radius of not less than 50 ft. and tangent whenever possible to, the right side of the street. If a dead-end street is of a temporary nature, provisions made for future extension of the street and reversion of the excess right of way to the adjoining properties."
In effect, the foregoing administrative determination rejected the developer's plan as reflected in its diagrammatic *61 sketch marked plan "A" and constituted an approval of a revised plan as heretofore indicated which is identified as plan "B."
The development company being dissatisfied with that decision, its attorney wrote an explanatory letter to the board, dated October 11, 1962, stating in part, "To require the turn around at the end of Jay Drive entirely in lots 100 and 101 * * * is not `reasonable' or `practicable.' It results in the loss of any use of 20% of the applicant's land." The communication concluded with the request that the board call a special meeting to reconsider its October 9, 1962 action with a view toward reversing its requirement relating to the cul-de-sac. On the same day, by letter of its attorney, plaintiff gave notice of appeal, pursuant to N.J.S.A. 40:55-1.19, to the Town Council of the Town of Bloomfield requesting a hearing "on notice to all parties in interest." In a subsequent letter of November 1, 1962 to the municipality, it was suggested that a hearing on the appeal be scheduled for November 19, 1962 "if you can fit it within your agenda." At a meeting of the town council on the last mentioned date, a resolution was adopted remanding the matter to the planning board "for reconsideration of its resolution pursuant to an appeal of David A. Rappeport, attorney for Troy Development Corp.," as indicated by the minutes of the meeting supplied to the court on our request at oral argument.
The precise reasons for the remand do not appear in the record. It is argued in defendants' brief that the purpose was solely for decisional clarification. There is nothing in the form of the remand to suggest that the town council intended by that action to release or waive its appellate jurisdiction then pending.
At a regular session of the planning board held the following night, November 20, 1962, the developer submitted an alternate proposal, which the board approved. The new proposition contemplated the elimination of the cul-de-sac and provided for a temporary turn around, with a radius of 25 feet, to be located wholly within the 50-foot right of way of Jay *62 Drive and at the sacrifice of sidewalks abutting the end lots 100 south and 112 north. That approved design was designated as plan "C." On November 28, 1962 a letter was transmitted to the municipal council withdrawing plaintiff's appeal.
We here note the November 20 action was subsequent to an election earlier that month, and, as a consequence thereof, there were changes the following January in the membership composition of the municipal governing body and also in a majority of the appointed personnel constituting the planning board.
When plaintiff presented to the town council, at a meeting on January 21, 1963, a pertinent development agreement, predicated upon plan "C," the council refused to authorize its execution and again remanded the matter to the planning board for further consideration, as the "Town Council was concerned about the creation of a dead-end street and, therefore, was returning it for further study by the Planning Board." At a meeting of the board on February 12, 1963 there was no response when the chairman called for a motion to affirm its action of November 20, 1962. A motion was then made and carried to reaffirm its decision rendered on October 9, 1962 by which plan "B" had been adopted. No appeal was pursued to the town council from that February determination of the board. Instead, the in lieu proceedings now under review were initiated.
At the trial before the Law Division, plaintiff urged the validity and finality of the board's approval of Plan "C." Defendants countered with a two-pronged defense  the action of the February 1963 board reaffirming the adoption of plan "B" was reasonable, lawful and controlling, and plaintiff failed to exhaust its administrative remedies under N.J.S.A. 40:55-1.19. The final judgment embraces the theory of the case which had been advanced by the developer. The Superior Court, Law Division, in entering final judgment, 80 N.J. Super. 570 (1963), declared (a) the action of the board on November 20, 1962 was effective and controlling, and the chairman of the board should sign plaintiff's proposed subdivision *63 plan with a notation thereon that approval had been obtained from the board; (b) the "Bloomfield Planning Board, the members of the Town Council and their administrative officers" should execute all necessary agreements, maps or other documents to carry out the November 20, 1962 decision of the board; and (c) the actions of the town council on January 21, 1963 and of the board on October 9, 1962 and February 12, 1963 were void and of no effect. The defendants Bloomfield Planning Board and the Mayor and Council, Town of Bloomfield, appeal.
On appeal to this court, the defendants not only contend error as to the resolution of the basic issues that were tried but they raise, for the first time, new issues, noting the same in their brief as required by R.R. 1:7-1(c). They now maintain (1) the November 20, 1962 planning board decision was null and void because the board exceeded the limited purpose and scope of the remand and there was no public notice or opportunity to be heard at that meeting, (2) the unlawful board action in November materially affected the vested rights of the adjoining land owners acquired under the prior decision of the board on October 9, 1962, and (3) there is no authority, power or jurisdictional right in a planning board to reconsider an application while an appeal thereon is pending before the municipal governing body.
We cannot ignore the exceptional circumstances which are present in the pending controversy. The matter is one of public concern, and the issues justify appellate review notwithstanding their belated assertion. See Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959), certification denied 31 N.J. 554 (1960).
It is beyond doubt that plan "C" (adopted November 20, 1962) circumvents the purposes and objectives of the applicable municipal land subdivision ordinance which plainly contemplates a cul-de-sac type of turn around, radius of not less than 50 feet, as a prerequisite to the approval of a dead-end street development. That ordinance specification was a major subject for consideration at the public hearing on October 9, *64 1962. It involved an important element of public policy directly associated with community welfare and safety. Because the neighboring property owners then in attendance or represented did not register formal objections to a plan with an adequate turn around provision, it does not follow that they were not entitled to notice of a subsequent meeting of the board when a substantially different plan was to be considered and, particularly so, when the new proposal disregarded the minimum municipal requirements.
If, as may well be, the town council intended to effectuate a remand, whether or not it was retaining its appellate jurisdiction, for the board's reconsideration of the underlying merits of plaintiff's application, appropriate notices and a hearing pursuant to N.J.S.A. 40:55-1.7 and the local land subdivision ordinance (section 5, subsection 2(b)) were essential prerequisites to a valid redetermination of the matter by the board. "There cannot be a substantial change in the rights of parties without a hearing on notice." Handlon v. Town of Belleville, 4 N.J. 99, 107 (1950). See also Virginia Construction Corp. v. Fairman, 39 N.J. 61 (1962).
The action of the board on November 20, 1962 is not sustainable, nor is its decision of October 9, 1962 as plaintiff has not had a review hearing thereon before the town council.
Fundamental justice and fairness to the community residents, whose interests are espoused by the defendants, require a reversal of the trial court's judgment. The matter is remanded to the planning board to accord the developer an opportunity to submit a new application for final approval and to be heard thereon upon appropriate notices as required by the legislative enactment and by the ordinance afore-mentioned, with the right of any aggrieved party to appeal to the town council as provided by the ordinance (section 5, subsection 4(g)) and by N.J.S.A. 40:55-1.19.
Having reached that conclusion, we find it unnecessary to consider the remaining issues argued before us.
Reversed and remanded.