101 N.J. Super. 271 (1968)
244 A.2d 145
EDGAR P. SMITH, ET AL., PLAINTIFFS-RESPONDENTS,
v.
THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MORRIS, ET AL., DEFENDANTS, AND KARL SCHROTH AND J. & M. ASSOCIATES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1968.
Decided June 7, 1968.
*273 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. Howard S. Mitnick argued the cause for appellants (Messrs. Jacobs & Mitnick, attorneys).
Mr. Garret A. Hobart, IV argued the cause for respondents (Messrs. Schenck, Price, Smith & King, attorneys; Mr. Harold A. Price and Mr. Hobart, of counsel and on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendants Karl Schroth and J. & M. Associates (herein developers) appeal from a judgment of the Law Division in favor of plaintiffs (herein objectors) declaring *274 null and void the preliminary approval of two major land subdivisions granted by defendants Planning Board and Township Committee of the Township of Morris.
The parcels involved are located in an R-2 residential zone (minimum size of building lots 35,000 square feet) and are approximately 800 feet apart, with frontages on the northerly side of Spring Valley Road. The one is known as the Van Cleve Estates or Cooper Tract, and the other as the Eggert Tract. In voiding the approvals, the trial court held that the board and township committee disregarded the provisions of the township's Land Subdivision Ordinance restricting to 600 feet the length of dead-end streets and that their action in so doing represented an "arbitrary exercise of zoning authority."
It is here argued (1) the board had the power to approve subdivision plans which provide for streets in excess of 600 feet and properly exercised it, and (2) the Eggert subdivision does not contain a dead-end street in excess of that length.
A resume of the background facts will be helpful in casting the critical issues in their proper perspective.

The Cooper Tract
The Van Cleve development consists of approximately ten acres and contemplates eight building lots with a single access street, "Charlotte Lane." The street begins at Spring Valley Road and the westerly borderline of the tract, and follows an irregular course through the property for a distance of approximately 1100 feet, terminating with a cul-de-sac in the northeasterly corner of the property.
Developers' initial application to the board was for a minor subdivision of two lots out of the ten acres. It was reviewed at a conference meeting on April 6, 1964, at which time concern was evinced as to development plans for the remaining acreage. Subsequently, a plat for the entire tract was submitted for classification and, on July 20, 1964, it was classified as a major subdivision. Within a month thereafter application *275 was made for preliminary approval and then followed a series of conference meetings, regular meetings and public hearings at which the neighboring plaintiffs and their counsel voiced objections.
The principal problems involved the adequacy of water supply and storm drainage, the installation of sanitary sewers, zoning compliance and the acquisition of easements, all of which necessitated sundry negotiations with the township engineer, board of health, sewer survey committee, water department, county planning board and county park commission. However, at a regular meeting on December 21, 1964 a member of the board made inquiry as to the length of the road, to which the chairman replied, "this is not a permanent dead end street * * * it is up to the discretion of the Board to approve a dead end street of this length if they feel that it will eventually continue through." The minutes of an adjourned hearing on March 15, 1965 reveal that when objectors' engineer was questioned concerning the length of the dead-end street, he "pointed out that the Planning Board has the right to use their own discretion and vary from the provisions of the ordinance," and that the developers' engineer observed, "there are other roads of this type in this municipality and in several other municipalities."
On April 19, 1965 the board granted conditional preliminary approval, whereupon plaintiffs appealed to the township committee, which held a public hearing on June 3. The latter affirmed the action of the board after making the following determination:
"* * * (a) as to all of the matters raised by the appellants, the Township Committee finds and determines that no basis of fact exists to substantiate the appellants' objections to this preliminary approval; (b) as to all of the actions taken by the Planning Board, all of which have been reviewed by this Committee, the Committee finds that the Planning Board acted properly in all respects; (c) that McCrosky-Reuter, Morris Township Planning Consultants, having reviewed the preliminary subdivision, recommends to this Township Committee that the subdivision is in order and should be approved."

*276 The Eggert Tract
The Eggert subdivision, approximately 18 acres, was designed for 14 building lots to be serviced by two thorough-fares. The first, a bisecting street, "Blue Stone Terrace," is projected to extend at right angles to Spring Valley Road for a distance of approximately 890 feet toward the rear of the development where it dead-ends with a cul-de-sac. The second road, "Marshall Lane," emerges at right angles from that access street (about 550 feet from Spring Valley Road) and continues in a westerly direction for approximately 290 feet to a cul-de-sac at the westerly side of the tract. At this juncture we note there is no merit to the contention that "Blue Stone Terrace" is not a dead-end street in excess of 600 feet because it is intersected by "Marshall Lane."
The tract was classified as a major subdivision on March 15, 1965. Objections, problems, proceedings and hearings then ensued similar to those encountered by the developers with respect to the Cooper tract. On August 16, 1965 the board granted preliminary approval subject to stated conditions. That decision was appealed to the township committee which held a public hearing in September at which time the engineer for the objectors expressed criticism of many things but not the length of the streets. On November 11, 1965 the Township Committee, after a public hearing, affirmed the action of the board by a resolution in form substantially the same as the one adopted for the Cooper tract.

In Lieu Proceedings
Plaintiffs instituted separate proceedings in the Law Division to set aside the respective subdivision approvals; the actions were consolidated for trial. In substance, plaintiffs claimed: (1) procedural inadequacies; (2) the approved plats were not properly designed from an engineering viewpoint; (3) provisions for water supply, drainage and sewerage disposal were insufficient; (4) the board improperly interceded *277 on the developers' behalf in negotiations for an easement from the county park commission and board of chosen freeholders; (5) an easement for sewer mains could not be obtained; (6) the township committee unduly relied upon the opinion of planning experts, and (7) the approvals violated the municipal ordinance with respect to the limitations upon length of dead-end streets (we note that (7) was argued at the trial as to both tracts but at the pretrial it was relied upon by plaintiffs only with respect to the Cooper tract).
The developers and the municipal defendants filed answers averring, in substance, that the preliminary approvals were reasonable and legal, they were granted after a complete investigation and public hearings, and that the actions of the board and township committee were within proper municipal jurisdiction and discretion. Additionally, the developers filed a counterclaim against the plaintiffs for compensatory and punitive damages, charging tortious interference with economic advantages accruing to them in the lawful development of their property.
All of the issues raised by the objectors, except those relating to the roads, were resolved in favor of defendants. The trial court's findings against plaintiffs are amply supported by the record and should not be disturbed.
The judgment adverse to the developers was predicated solely upon a determination that the municipal bodies acted "in total disregard" of the local ordinance restrictions on the length of dead-end streets. The trial judge so concluded "with a great deal of regret," stating:
"It is clear to me that the public interest was ever foremost in the minds of the municipal officials. It is regrettable that in a matter of this dimension one departure from the requirements imposed by law should vitiate such a laudable effort. In my view, however, that one departure is one of considerable substance."
In the course of argument on a motion to settle the form of the judgment, counsel for the municipal bodies requested *278 that the matter be remanded to the planning board to consider whether the subdivider-defendants were entitled to a relaxation of the ordinance requirements within the framework of its provisions. The trial court declined to do so. At the same hearing plaintiffs moved for a dismissal of the developers' counterclaim, which was granted with the comment that if "plaintiffs' complaint is ultimately dismissed on an appeal, the defendant[s] should have the opportunity at least to have the issue further examined."

Dead-End Streets Issue
We turn now to the township land subdivision ordinance. Article VIII, "Design Standards," section 2, "Streets," (m) provides that "Dead-end streets (culs-de-sac) shall not be longer than 600 ft. * * *." Article XI, "Administration," section 1, reads:
"* * * if the subdivider or his agent can clearly demonstrate that, because of peculiar conditions pertaining to his land, the literal enforcement of one or more of these regulations is impracticable or will exact undue hardship, the planning board may permit such variance or variances as may be reasonable and within the general purpose and intent of the rules, regulations and standards established by this ordinance."
It is thus perfectly clear that the planning board does not have the absolute authority and discretion to approve plans which are at variance with the express terms of the local legislation. The ordinance under review was adopted pursuant to N.J.S.A. 40:55-1.1 et seq. (L. 1953, c. 433), the enabling legislation known as the Municipal Planning Act. Certain pertinent sections should be noted:
N.J.S.A. 40:55-1.14 permits the municipal governing body to provide by ordinance for the regulation of subdivisions within the municipality by "approval of the planning board acting in lieu of the governing body of all plats," provided such ordinance "establishes regulations, requirements, *279 and standards for plat approval by the planning board."
N.J.S.A. 40:55-1.15 provides that the governing body shall adopt by ordinance "standards for approving the design of subdivisions and the required street improvements, requirements for the submission of subdivision plats, and the procedure to be followed by subdividers." It also contains a provision that "Where there is a municipal zoning ordinance, the standards in the subdivision ordinance with respect to minimum lot sizes and lot area requirements shall be identical with the provisions of the zoning ordinance."
N.J.S.A. 40:55-1.19 mandates that on an appeal to the township committee, and after hearing thereon, "The findings and reasons for the disposition of the appeal shall be stated on the records of the governing body."
N.J.S.A. 40:55-1.20 states that the planning board shall require, "among other conditions in the public interest," that the tract shall be adequately drained, shall have streets of sufficient width and grade to accommodate traffic and fire fighting equipment and shall be coordinated so as to compose a convenient system, conforming to the official map or, if there is no official map, "relating properly to the existing street system."
Municipalities are vested with a broad delegation of authority to promulgate "regulations, requirements and standards" governing subdivision approvals and, since their power is to be broadly construed, they have the right to adopt a variance procedure if it be appropriately circumscribed in its scope.
This is not a case dealing with a grant of an "undue hardship" variance from a municipal zoning ordinance, and the analogous authorities to which we have been cited, interpreting N.J.S.A. 40:55-39(c), are not controlling. Municipal planning embraces zoning but the converse does not hold true. Planning legislation and zoning, although sometimes deemed a single conception, do not cover identical fields of municipal endeavor. Angermeier v. Sea Girt, 27 *280 N.J. 298, 308 (1958). Cf. Smilow v. Orange Planning Board, 58 N.J. Super. 108 (App. Div. 1959). "Zoning covers the immediate use of land, while planning restricts transferability and future use." Stoker v. Town of Irvington, 71 N.J. Super. 370, 379 (Law Div. 1961). It is pointed out in Note, "Land Subdivision Control," 65 Harv. L. Rev. 1226, 1227 (1952):
"Zoning presupposes that the needs of the community have become sufficiently crystallized to permit the enactment of specific regulations. Subdivision control, on the other hand, establishes more general standards to be specifically applied by an administrative body in order to insure that the change of use will not be detrimental to the community."
The action of the planning board must be viewed in light of the legislative intent and purpose in enacting the Municipal Planning Act and the objectives sought by the township in adopting an ordinance implementing that legislation. Municipal agencies, when considering land subdivision problems, should bear in mind that more is involved than the mere buying, selling, using and developing of land, for "subdividers are dealing in the permanent assets of the community." Haar, Land Use Planning, p 347 (1959). It is the planning board's duty "to protect the public and future owners of property in the subdivision by requiring, among other conditions, adequate road facilities." Noble v. Chairman and Tp. Com. of Mendham Tp., 91 N.J. Super. 111, 119 (App. Div. 1966), certification denied 48 N.J. 120 (1966). See also Newark, etc., Cream Co. v. Parsippany-Troy Hills Tp., 47 N.J. Super. 306, 333 (Law Div. 1957); Levin v. Livingston Tp., 35 N.J. 500, 511 (1961); Cunningham, "Control of Land Use in New Jersey Under the 1953 Planning Statutes," 15 Rutgers L. Rev. 1, 49-50 (1960); Williams, "Development Controls and Planning Controls: The View from 1964," 19 Rutgers L. Rev. 86, 94-95 (1964).
*281 In the instant matter a relaxation or "variance" with respect to the length of dead-end roads, which the subdivision ordinance purports in general terms to authorize, within the concept of law applicable to municipal planning, is dependent upon the board's findings of fact and a decision based thereon that the subdividers have "clearly" demonstrated to the board's satisfaction, in the first instance, that because of the peculiar conditions of the subject land a literal enforcement of the maximum road length would be "impracticable" (a term not used in zoning, N.J.S.A. 40:55-39(c)), or that it would "exact undue hardship," and also, if such a variance be granted, it would be "reasonable" and "within the general purpose and intent of the rules, regulations and standards" established by the ordinance. Article XI, section 1, supra.
The planning board, however, made no fact findings upon which a reviewing court could pass judgment on the propriety of its conclusion. Indeed, as the trial court stated, the problem "received little attention" although "upon occasion isolated comment appeared and the matter was forgotten, for the moment at least."
Neither of the preliminary approvals made any reference to the need for a variance. The municipal bodies manifestly misconceived a fundamental requirement of the ordinance and acted under a mistaken belief as to their authority. It is plain from a reading of the record that throughout the local proceedings the municipal defendants, the engineers who testified and all interested parties assumed that the board had the unfettered right to approve plat plans embracing dead-end streets that exceeded the prescribed maximum length. In this, of course, they were in error and, accordingly, the Law Division was justified in finding that the municipal action in that regard represented an arbitrary exercise of authority. However, in the circumstances, the trial court should have granted the request of the municipal defendants for a remand. Compare Mansfield & Swett, Inc., v. Town of West Orange, 120 N.J.L. 145, 160 (Sup. Ct. *282 1938). Cf. Stafford Smith v. Zoning Bd., etc., Madison, 59 N.J. Super. 553, 560 (App. Div. 1960); Highpoint, Inc. v. Bloomfield Planning Board, 80 N.J. Super. 570, 574-575 (Law Div. 1963), reversed 87 N.J. Super. 58 (App. Div. 1964).
Justice to all concerned requires a remand by this court to the board for a re-examination of the road plans and to make essential findings within the intendment of the township land subdivision ordinance as distinguished from the zoning ordinance. The board shall make specific findings as to whether a strict enforcement of the subdivision ordinance limitation on the length of dead-end roads, in light of the overall municipal planning, would be "impracticable" or would "exact undue hardship" because of the peculiar conditions pertaining to the developers' land, and whether a variance or relaxation of the 600-foot length requirement would be reasonable and within the general purposes and intent of the subdivision ordinance.
The matter is remanded to the planning board for further proceedings not inconsistent with this opinion.
So ordered. We do not retain jurisdiction.