543 P.2d 524 (1975)
A. G. SHOPTAUGH, Plaintiff-Appellant,
v.
The BOARD OF COUNTY COMMISSIONERS OF EL PASO COUNTY, Defendant-Appellee.
No. 75-229.
Colorado Court of Appeals, Div. I.
October 9, 1975.
Rehearing Denied November 6, 1975.
Certiorari Denied January 5, 1976.
*525 Isaac, Walsh & Johnson, Howard J. Alpern, Robert M. Isaac, Colorado Springs, for plaintiff-appellant.
Floyd, Kramer & Lambrecht, Clark A. Floyd, Colorado Springs, for defendant-appellee.
Selected for Official Publication.
ENOCH, Judge.
Shoptaugh appeals from a judgment of the district court which upheld the disapproval of a preliminary subdivision plat by the Board of County Commissioners of El Paso County. We affirm.
Shoptaugh (landowner) is the owner of real property located in El Paso County which was zoned A-2 Agricultural or Farming. In July 1974, the landowner submitted a preliminary subdivision plat identified as "Shoptaugh Subdivision Filing #2" to the El Paso County Planning Commission. The plat provided for division of the property into four lots; each lot was in excess of five acres and was to accommodate one single family residence. The Planning Commission distributed copies of the proposed plat to various agencies for review and recommendation as required by the El Paso County Subdivision Regulations. After receiving the agencies' recommendations and conducting a public hearing, the Planning Commission unanimously *526 approved the plat. The plat was then forwarded to the Board of County Commissioners which reviewed the agencies' recommendations and voted unanimously to disapprove the plat. Two of the three Commissioners indicated that the primary reason for disapproval was the report of the Colorado State Forest Service which stated that a high fire danger existed in the area, caused by the plant life and topography, accentuated by the potential difficulty of maneuvering emergency equipment due to the location of the flag lots. In a C.R.C.P. 106 proceeding the landowner sought relief in the district court; however, the court found that the Board had not acted arbitrarily or capriciously and upheld its decision.
The landowner argues that the plat met all the technical requirements of the El Paso County Subdivision Regulations, and that thus the Board had no authority to consider the agencies' reports and disapprove the plat. Hence, the basic issue raised by this case is a determination of what factors may be utilized by the Board of County Commissioners in disapproving a plat.
Before reaching this issue, however, we must determine if the agency reports which were admittedly submitted late, were properly considered by the Board. Section 30-28-136, C.R.S.1973, establishes that upon receipt of a preliminary plat, copies of the plat shall be distributed to various named agencies, including the Colorado State Forest Service, and § 30-28-136(2), C.R.S.1973, provides in part:
"The agencies named in this section shall make recommendations within twenty-four days after the mailing by the county or its authorized representative of such plans unless a necessary extension of not more than thirty days has been consented to by the subdivider and the board of county commissioners of the county in which the subdivision area is located. The failure of any agency to respond within twenty-four days or within the period of an extension shall, for the purpose of the hearing on the plan, be deemed an approval of such plan. . . ."
It appears that the statute is designed to allow the Planning Commission to make a decision on a preliminary plat without waiting indefinitely for the agencies' reports. Here, the reports although submitted well after the 24 days provided for in the statute were nevertheless considered by the Board. Hence, the issue is one of procedural due process. These reports were received prior to the first hearing held by the Planning Commission on the subdivision plat, and no decision was made by the Commission on the plat until a second hearing was held several weeks later. Since the landowner was apprised of the reports and had an opportunity to respond to the negative recommendations prior to any decision, his due process rights were not abridged. See Sundance Hills Homeowners Ass'n v. Board of County Commissioners, Colo., 534 P.2d 1212. Under the facts of this case we find no error in the Board's consideration of the late agency reports.
The major contention raised by the landowner is that the Board's disapproval of the plat based on the recommendations of the Colorado Forest Service is arbitrary and capricious. He argues that the proposed five-acre single family dwellings were permitted by the zoning, that he complied with the requirements of the subdivision regulations, and that thus the Board had no right to take any action except approval. The essence of his argument is that the Board had no discretion to consider the agency reports which are required by both the El Paso County Subdivision Regulations and § 30-28-136, C.R.S.1973. We disagree.
Initially it must be recognized that zoning and subdivision regulations are separate and distinct legislation and serve different purposes. As was stated in Smith *527 v. Township Committee, 101 N.J.Super. 271, 244 A.2d 145,
"Municipal planning embraces zoning but the converse does not hold true. Planning legislation and zoning, although sometimes deemed a single conception, do not cover identical fields of municipal elevator. . . . `Zoning covers the immediate use of land, while planning restricts transferability and future use.'"
It was also pointed out in Note, Land Division Control, 65 Harv.L.Rev. 1226 (1952):
"Zoning presupposes that the needs of the community have become sufficiently crystallized to permit the enactment of specific regulations. Subdivision control, on the other hand, establishes more general standards to be specifically applied by an administrative body in order to insure that the change of use will not be detrimental to the community."
See also Popular Refreshments, Inc. v. Fuller's Milk Bar & Recreation Center, Inc., 85 N.J.Super. 528, 205 A.2d 445.
Here, the landowner argues that since the proposed use of the land was a use of right under the zoning laws, the Board had no alternative but to either change the zoning or approve the plat. This argument fails to take into consideration that a subdivider must first meet the zoning regulations and then additionally must comply with the state and county subdivision regulations.
The landowner relies on Western Paving Construction Co. v. Board of County Commissioners, 181 Colo. 77, 506 P.2d 1230, and Bauer v. City of Wheat Ridge, 182 Colo. 324, 513 P.2d 203. However, these cases are not dispositive of the issue at bar. Both of these cases dealt with "special use" permits in areas where the zoning would allow the use but special criteria had to be complied with in areas subject to flooding. In both cases the court found that the legal requirements were met by the parties requesting the special use permits and that thus the permits should have been granted. Here, the issue is whether the landowner met all of the legal requirements, or whether the fire hazard prevented his compliance with all statutory regulations.
Section 30-28-133, C.R.S.1973, provides the enabling legislation which authorizes county planning commissions and the Board of County Commissioners to adopt and enforce subdivision regulations. A landowner must comply with all county as well as state subdivision requirements. Section 30-28-133(5), C.R.S.1973, specifically directs that the county subdivision regulations are of primary importance:
"No subdivision shall be approved under Section 30-28-110(3) and (4) until such data, surveys, analyses, studies, plans, and designs as may be required by this section and by the county planning commission or the board of county commissioners have been submitted, reviewed, and found to meet all sound planning and engineering requirements of the county contained in its subdivision regulations."
The El Paso County subdivision regulations were enacted "for the purpose of promoting the health, safety, convenience, and welfare of the general public. . . ." El Paso County Subdivision Regulations, Section I(C) (1972). Section III(B)(5) of these Regulations requires that copies of the plat be distributed to various agencies, including the Colorado State Forest Service, for findings and recommendations, and in Section III(B)(7), these Regulations further provide that the planning department shall review the preliminary plat to determine if it is "consistent with the standards set forth in these regulations and shall investigate the relationship of existing and proposed land use."
If the planning department or the Board of County Commissioners has no authority to consider and act on these reports required by the regulations, particularly where they indicate a hazard to the public, then the general purpose to be *528 served by enacting the regulations would be vitiated.
Here, the planning department recommended disapproval to the planning commission based on the agency reports. The evidence indicates that the planning commission voted for approval because a prior subdivision by Shoptaugh of other land which had been acquired prior to state legislation on subdivision regulations, Colo. Sess. Laws 1972, Ch. 81 ("Senate Bill 35") had been approved by the Board. Hence, as to the issue of this subdivision's compliance with the pertinent regulations, the planning commission approval is without significance.
In support of his claim that the plat conforms to the regulation, the landowner cites the El Paso County Subdivision Regulations § III(B)(8)(a) (1972) which states that if the County Planning Commission approves the preliminary plat, "said plat shall be deemed to be in conformity with the standards set forth in the regulations . . . ." He then cites several authorities and cases which state that if the plat conforms to the regulations, it must be approved. However, the regulations also state that if the Board of County Commissioners "elects to disapprove the preliminary plat, said plat shall be deemed not to be in conformity with the standards or the intent as set forth in these regulations." Section III(B)(8)(c). The regulations also state that it is the Board which has the responsibility for making decisions of approval or disapproval. Section I(H)(6). Therefore, under these regulations, the Board had to decide whether the plat did indeed conform to the regulations.
After considering the standards established by the regulations for the "health, safety, convenience, and welfare of the general public," the majority of the Board based its decision to disapprove the plat on the recommendation of the Colorado State Forest Service that the subdivision would create an extreme fire hazard. Such standards constitute guidelines within which the Board may exercise its discretion in determining whether a plat should be approved. In Guildner Way, Inc. v. Board of Adjustment, Colo.App., 529 P.2d 332, an ordinance allowed the Board of Adjustment to grant a special use permit after considering:
"Compatibility with the surrounding area, harmony with the character of the neighborhood, need for the proposed use, its effect upon the immediate area, its effect on further development of the area, and the health, safety, and welfare of the inhabitants of the area and the County."
This court held that such ordinance established the criteria for the granting of the special use permit. The Board in that case denied the permit on several grounds, one being the detrimental effect on the health, safety and welfare of the citizens. This court stated:
"There was testimony in the record that the proposed use would aggravate the fire hazard, create traffic congestion, endanger school children and retard the development of the area. This was sufficient to support the Board's conclusion [denying the permit]."
See also Isabelle v. Town of Newbury, N. H., 321 A.2d 570; In re Pearson Kent Corp. v. Bear, 28 N.Y.2d 396, 332 N.Y.S.2d 235, 271 N.E.2d 218; Popular Refreshments, Inc. v. Fuller's Milk Bar & Recreation Center, Inc., supra.
Here, the Board, acting under the acceptable standards of health, safety, and welfare, found that the proposed subdivision plat would present a serious fire danger to the general populace and this finding is supported by competent evidence.
Additionally, § 30-28-133(6), C.R.S. 1973, provides:
"No Board of county commissioners shall approve any preliminary plan or final plat for any subdivision located within the county unless the subdivider has *529 provided the following materials as part of the preliminary plan or final plat subdivision submission: . . . (c) Evidence to show that all areas of the proposed subdivision which may involve soil or topographical conditions presenting hazards or requiring special precautions have been identified by the subdivider and that the proposed uses of these areas are compatible with such conditions."
Since there was evidence presented that the proposed use was not compatible with the hazardous topographical conditions, it appears that not only was the Board acting properly under the El Paso County Subdivision Regulations, but also within the guidelines set forth in this statute. Therefore, the district court was correct in finding that the Board of County Commissioners did not act arbitrarily or capriciously.
Judgment affirmed.
COYTE and BERMAN, JJ., concur.