RICHARD M. SINGER, *et al.*

*v.*

HENRY DAVENPORT, *et al.*, THE JEFFERSON COUNTY

PLANNING COMMISSION

(No. 14199)

Decided April 4, 1980.

*Peter L. Chakmakian* for appellants.

*Douglas S. Rockwell* for appellees.

NEELY, CHIEF JUSTICE

The case before us presents an issue well-known across America, namely, the extent to which a community may regulate and control new housing developments. Our Court, however, has never addressed this issue since the regulation and control of new housing developments is a relatively recent problem in West Virginia.

The appellees, plaintiffs below, owners of a piece of real estate near Charles Town, West Virginia, prepared a plan for residential development of their property. They applied to the Jefferson County Planning Commission, the appellants and defendants below, for the approval of their plat. The Commission held hearings on the proposal and by letter rejected the application and final plat. The developers brought suit in the Jefferson County Circuit Court challenging the scope of the Planning Commission's power to deny an application to record a plat. The Circuit Court agreed with the developers, ordering that the Commission approve the plat so that the developers could proceed. We affirm.

The developers initially submitted a plat in June, 1976 which provided for 397 mobile homesites on an 80 acre tract. After encountering opposition to the plan, the developers submitted a revised plat in November, 1976 which called for 397 conventional homes on the same 80 acre tract. Opposition continued, so in January, 1977 the developers submitted the plat in question which called for 295 homes on lots averaging 7100 square feet. The plat provided for developers' installation of a central water and sewer system, a sewage treatment plant, gravel roads, curbs, sidewalks, fire hydrants, recreational areas and two twenty thousand gallon water storage tanks for additional fire protection. The developers also advised the Planning Commission that they had received the necessary permits from the State Health Department and the Department of Natural Resources and had secured from the State Department of Highways the necessary permits to open up the land to the highway.

The Commission held hearings on the final plat application and determined that the project as proposed: (1) did not adequately provide for a population distribution in a manner creating conditions favorable to health, safety, convenience and the harmonious development of the county; (2) did not adequately provide for schools; and, (3) did not adequately provide for recreational facilities. The Planning Commission relied upon *W. Va. Code*,

8-24-30 [1969] which allows the Commission to determine if the plat provides for "[d]istribution of population and traffic in a manner tending to create conditions favorable to health, safety, convenience and the harmonious development of the municipality or county." *W. Va. Code*, 8-24-30(4) [1969].

The Circuit Court concluded that when a plat is presented to the Planning Commission for approval the applicable state statutes and subdivision regulations confine the Commission's inquiry to two questions: 1) is the proposed subdivision in harmony with the comprehensive plan, and 2) does the proposed subdivision plan violate any of the subdivision regulations of Jefferson County? The Circuit Court determined that the subdivision did not conflict with the comprehensive plan and that the transcribed record in the proceedings failed to disclose any findings by the Planning Commission of any violation of the Subdivision Ordinance and Regulations of Jefferson County. Thus, the court found that the record below established that the Planning Commission had acted in excess of its jurisdiction, miconstrued the applicable statutes, and abused its discretion.

The Commission argued that the proposed plat conflicts with the comprehensive plan because the agricultural area in which the subdivision is to be located is clearly designated for development in five to fifteen acre parcels, a size some thirty times larger than the lot sizes submitted in the developers' plat. In addition, the Commission argues that the provisions in *W. Va. Code*, 8-24-30 [1969] clearly provide authority to disapprove plats upon failure adequately to provide for schools and recreational facilities.

I

The first issue which we must address is whether the developers' plan conflicts with the Jefferson County Comprehensive Plan. The argument that the subdivision failed to comply with the restrictions on lot size in the comprehensive plan is not compelling since the Commission failed to mention such a problem in their letter of

14 March 1977 which rejected the proposal. If indeed the subdivision lot size conflicted fatally with the comprehensive plan one wonders why the Commission allowed the hearings to progress in such detail. However, even if the comprehensive plan were shown directly to conflict with the subdivision, our Court agrees with the lower court's interpretation of the statutory scheme, namely that the comprehensive plan is to be used by the Planning Commission to aid them in drawing up their subdivision ordinances. The comprehensive plan was never intended to replace definite, specific guidelines; instead, it was to lay the groundwork for the future enactment of zoning laws. Where the lower court's two-step inquiry into the validity of a rejection of a subdivision proposal seems to suggest that the comprehensive plan has any effect as a legal instrument, we respectfully disagree.

It is stipulated that the voters of Jefferson County have defeated every attempt to enact a county-wide zoning ordinance. When the voters have rejected zoning ordinances, the Planning Commission may not enforce zoning under the guise of the comprehensive plan. It would be absurd to suggest that the consultants who drew up the comprehensive plan were empowered to determine the future land use of Jefferson County. This interpretation is supported in the conclusion of the comprehensive plan when the consultants state that "[t]he single and most important tool for Plan implementation is the zoning ordinance. Immediate consideration should be given to the enactment of the proposed ordinance to provide the county with a legal instrument for controlling development in accordance with the Land Use Plan." Jefferson County Comprehensive Plan, Phase II, 115 (1971).[1] Thus, the comprehensive plan is merely the foundation for the control of future development and growth in Jefferson County.

---

[1] Furthermore, the Attorney General addressed this comprehensive plan in question and concluded "[i]rrespective of whether a comprehensive plan with subdivision regulations has been adopted by a county, there can be no zoning regulations placed in effect without passage of an ordinance." Op. Atty. Gen. (April 9, 1974).

## II

Subdivision regulations which are permitted under *W. Va. Code*, 8-24-28 through 35 [1969] should be distinguished from zoning ordinances. The purpose of zoning is to provide an overall comprehensive plan for land use, while subdivision regulations govern the planning of new streets, standards for plotting new neighborhoods, and the protection of the community from financial loss due to poor development. *Shoptaugh v. Board of County Comm'rs of El Paso County*, 37 Colo. App. 39, 543 P.2d 524 (1975); *Smith v. Township Committee of Township of Morris*, 101 N.J. Super. 271, 244 A.2d 145 (1968). Thus while zoning can prohibit certain uses of property for subdivision purposes, regulations are designed to govern the manner in which unrestricted property is developed. *Board of Supervisors v. Georgetown Land Co.*, 204 Va. 380, 384, 131 S.E.2d 290, 293, (1963).

The interaction between the Planning Commission and the zoning ordinances has not been well defined since there has been almost no judicial interpretation of the applicable statute on Planning and Zoning, *W. Va. Code*, 8-24-1 *et seq.* [1969].[2] The Jefferson County Planning Commission argues that the statute enables them to have nearly complete supervisory control over land use regarding new subdivisions since they are entitled to refuse to approve the recordation of a subdivision plat. *W. Va. Code*, 8-24-28 [1969]. The developers agree that the Commission is empowered to enforce the Jefferson County Subdivision Regulations to regulate the street design, block lengths, casements, sidewalks, etc. The lower court found, and the Commission does not contest, that an examination of the transcribed record clearly shows that the development complied fully with these specific regulations.

---

[2] The Attorney General, however, has concluded that the Legislature intentionally separated subdivision from zoning in Article 24 and that this separation is most clearly manifested by the creation of a board of zoning appeals, no member of whom may be a member of the planning commission. 53 Op. Atty. Gen. (Aug. 13, 1969).

The crux of the argument, therefore, centers on the statutory provision which enumerates the basis for the Commission's action upon applications for approval.[3] The question before the Court is the extent to which the Planning Commission is accorded general authority to oversee the location of subdivisions and their desirability, rather than the way in which they are constructed. Obviously the existence of reasonable rules governing the manner of subdividing may preclude some subdivisions because the topography forecloses conformity to the regulations, but that is far different from turning regulation into disguised zoning.

The question which we must address is greatly simplified because the Jefferson County Planning Commission failed to incorporate their guidelines for harmonious development, including such nebulous criteria as requirements for recreation and schools, into specific rules. Article IV of the Subdivision Regulations provides the only distillation of the broad statutory guidelines governing whether particular property may be subdivided. That section says:

> Land shall be suited for the purpose for which it is to be subdivided and land subject to hazards of life, health and safety shall not be subdivided for residential use until such hazards have been removed. Land within a flood plain area shall not be subdivided for residential, commercial or industrial use. The use of such land for recreational purposes shall not be prohibited. Article IV,

---

[3] The Commission shall determine if the plat provides for "[d]istribution of population and traffic in a manner tending to create conditions favorable to health, safety, convenience, and the harmonious development of the municipality or county," *W. Va. Code*, 8-24-30(4) [1969], and "[f]air allocation of areas for streets, parks, schools, public and semipublic buildings, homes, utilities, business and industry. As a condition of approval of a plat the commission may specify: (1) The manner in which streets shall be laid out, graded and improved; (2) Provisions for water, sewage and other utility services; (3) Provision for schools; (4) Provision for essential municipal services; and (5) Provision for recreational facilities." *W. Va. Code*, 8-24-30(5) [1969].

Section 401, Jefferson County Subdivision Regulations.

An examination of the Commission's findings as reported in the letter of 14 March clearly demonstrates that the Commission's action was not based upon this provision. There was no evidence suggesting that this land was unsuitable for residential development or that it was subject to any hazards of health, life or safety. While the Commission argues that the lot size is thirty times smaller than that suggested in the comprehensive plan, the only applicable subdivision regulation states that "[l]ot sizes must conform with State Health Department regulations where such regulations apply." Article IV, Section 403, Jefferson County Subdivision Regulations. Similarly, while the Commission contends that the provision for recreational facilities was inadequate, there is no rule to guide the developer to suggest what percentage of land devoted to recreation would be adequate.

## III

As we stated earlier, this factual situation does not present some of the intractable problems other jurisdictions have faced in land use law because the Planning Commission failed to show any instance in which the developers did not abide by specific regulations. The imposition of reasonable regulations as conditions precedent to subdivision of land is not unconstitutional as a taking of private property for public use without just compensation, *Frank Ansuini, Inc. v. City of Cranston*, 107 R.I. 63, 264 A.2d 910 (1970), but, the regulations must be reasonable and the standards adequate to restrain the discretion of the Commissioners. *Sonn v. Planning Comm'n of Bristol*, 172 Conn. 156, 374 A.2d 159 (1976); *Roussey v. City of Burlinghame*, 100 Cal. App.2d 321, 223 P.2d 517 (Dist. Ct. App. 1950). Obviously the regulations of the planning board must be reasonably definite and carefully drafted so that property owners may know in advance what is required of them and what standards and procedures will apply. *Canter v.*

*Planning Board of Westborough,* 4 Mass. App. 306, 347 N.E.2d 691 (1976).

Our own Court, while not addressing the issue of subdivision regulations, found the refusal by the Philippi City Council of an application for a building permit to be void since the applicable city ordinance contained "no prescribed rules, standards or guides for the granting or withholding of such permits." *State ex rel. Ammerman v. City of Philippi,* 136 W.Va. 120, 124, 65 S.E.2d 713, 715 (1951). The Court found that under such an ordinance the City was allowed to act arbitrarily and capriciously and that the absence of reasoned rules made it impossible for a court to review the fairness of the decision. The holding in *Ammerman* was reaffirmed in *Anderson v. City of Wheeling,* 150 W.Va. 689, 149 S.E.2d 243 (1966) where the court found a city zoning ordinance invalid because it lacked fair standards or rules.

The case before us does not require us to pass on the legitimacy of provisions requiring the schools, utility services, and essential municipal services articulated in *W. Va. Code,* 8-24-30(5) [1969] since the validity *vel non* of those sections are not fairly raised in this litigation. The facts of this case are not conducive to the development of a detailed definition of where the powers of a planning commission end and where those of a zoning commission must begin. Certainly, there is a distinction between regulating the manner in which a subdivision can be constructed and regulating where land can be devoted to subdivision use. The former is the province of a planning commission, while the latter is exclusively the province of a zoning commission.

*W. Va. Code,* 8-24-30(5) [1969] sets forth certain criteria which are within the power of the developer and certain criteria which are exclusively within the power of the government. Obviously, a developer cannot build a school and requiring him to do so may be unreasonable; however, he is capable of providing such facilities as protected areas for children to await their school buses. In order to be within its legitimate authority, a planning

commission's regulations must apply equally to all unzoned land in the county and their regulations cannot evince the intention to make the creation of new housing so difficult or expensive as to discourage or eliminate growth. Different rules may be developed for differing categories of land based upon topography, the availability of services from existing public service districts, or the existence of highways, but the planning commission is not entitled to block out a section of unzoned land and, in effect, forbid its subdivision regardless of how artfully they design their regulations to this end. A further development of these principles, however, we leave for a later day when they may be developed within the context of a discrete factual situation.

For the reasons assigned above, the judgment of the Circuit Court of Jefferson County is affirmed.

*Affirmed.*