671 S.E.2d 794

**Donald E. LARGENT, Plaintiff Below, Appellant,**

v.

**ZONING BOARD OF APPEALS FOR THE TOWN OF PAW PAW and the Town of Paw Paw, a municipal corporation, Defendants Below, Appellee.**

No. 33832.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2008.

Decided Dec. 10, 2008.

Concurring Opinion of Justice Starcher Dec. 30, 2008.

---

Michael L. Scales, Greenberg & Scales, PLLC, Martinsburg, for Appellant.

Christopher D. Janelle, Sutton & Janelle, PLLC, Martinsburg, for Appellee.

BENJAMIN, Justice.[1]

Appellant and plaintiff below Donald E. Largent (hereinafter "Appellant") appeals a June 4, 2007, order entered by the Circuit Court of Morgan County granting summary judgement in favor of the Appellees and defendants below, the Zoning Board of Appeals for the Town of Paw Paw and the Town of Paw Paw, a municipal corporation, (hereinafter, collectively "Appellees"), in this declaratory judgment action regarding the validity of a 1972 zoning ordinance for the Town of Paw Paw. For the reasons set forth herein, we reverse the Circuit Court of Morgan County's June 4, 2007, order and remand this matter for entry of an order granting summary judgment in favor of the Appellant on the basis that the zoning ordinance at issue is invalid.

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 1972, the Town of Paw Paw adopted a planning and zoning ordinance. which authorized the designation of certain areas as "Conservation Open Space" (hereinafter "COS") districts. These COS districts limited use of the land in any such district to: (a) farms, tree and plant nurseries; (b) parks, playgrounds, golf courses, public and private recreational uses, and cemeteries; (c) game, wildlife, and nature study preserves and reservations; and (d) flood control, water treatment facilities, sewage treatment plants, other utilities and public works. Appellant owns an interest in approximately seventy (70) acres in such a COS district.

Seeking to develop his land, on or about February 27, 2006, Appellant sought a zoning variance and was denied by letter dated March 4, 2006. Thereafter, he instituted the instant declaratory judgment action seeking to have the 1972 zoning ordinance declared invalid on the basis that the Town of Paw Paw had not, at the time it adopted its 1972 zoning ordinance, previously adopted a comprehensive plan and that, under applicable statutes, such a comprehensive plan was a legal prerequisite to the adoption of a valid zoning ordinance.

On cross-motions by the parties for summary judgment, the circuit court denied the motion of the Appellant and granted the motion of the Appellees, having determined that in 1972 when the challenged zoning ordinance was adopted:

West Virginia Code § 8-24-17 [1969 relating to what a comprehensive plan may include] contained no mandatory components for a comprehensive plan. Even if it did, § 8-24-19 [1969 governing adoption of a comprehensive plan] contained no requirement for the adoption of the same prior to the adoption of a zoning ordinance. Accordingly, when the Town of Paw Paw

zoning ordinance was adopted, it was legally adopted and it is expressly validated by the clear language of West Virginia Code § 8A-7-12 [2004],[2] which in the Court's opinion acts as a savings clause.

On appeal, Appellant argues that the circuit court erred in its interpretations of W. Va. Code §§ 8-24-16 to -19 (1969) and W. Va. Code § 8A-7-12 (2004). The parties agree that there are no genuine issues of fact and that the only issue before this Court is a question of law regarding the statutory requirements applicable to the 1972 adoption of the Town of Paw Paw's zoning ordinance and whether the same satisfies the "legally adopted" requirement of W. Va.Code § 8A-7-12 (2004).

## II.

### STANDARD OF REVIEW

 It is well recognized in this jurisdiction that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Likewise, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). Accordingly, we proceed *de novo* in this matter.

## III.

### DISCUSSION

 While the issue before this Court is to be resolved in accordance with the provisions of W. Va.Code §§ 8-24-1, *et seq.* (1969), we must examine not only such urban and rural planning and zoning provisions and W. Va. Code 8A-7-12 (2004), but also their context. We must also look at legislation which has preceded and followed the effective period of those statutes, *i.e.,* July 1, 1969 to June 11,

---

2. In 2004, West Virginia enacted comprehensive changes to its statutes governing land use planning. West Virginia Code § 8A-7-12 (2004), provides:

All zoning ordinances, all amendments, supplements and changes to the ordinance, legally adopted under prior acts, and all action taken under the authority of the ordinance, are hereby validated and the ordinance shall continue in effect until amended or repealed by action of the governing body taken under authority of this article.

2004, which also provided authorizations to municipalities in West Virginia to plan the development of territory within their jurisdictions and to classify and regulate through zoning how properties therein may be used.

West Virginia provided the first legislative authorizations for municipal planning and zoning in 1931 through the adoption of Chapter 8, Article 5 of the *West Virginia Code.* At that time, municipalities were granted the power:

> to regulate and restrict the height, number or stories, and size of buildings and any other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purpose.

W. Va.Code § 8–5–1 (1931). In furtherance of these purposes, municipalities were permitted to divide their territories into districts "of such number, shape and area as may be deemed best suited to carry out the purposes of this article; and within such districts ... regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land." W. Va. Code § 8–5–2 (1931). Any such regulation, however, was required to be made in accordance with a comprehensive plan. W. Va. Code § 8–5–3 (1931). It is thus apparent that the adoption of a comprehensive plan for the development of a municipality was a necessary prerequisite to the exercise by a municipality of the zoning powers authorized by Article 5, including the division of a municipality's territory into districts, because W. Va.Code § 8–5–3 (1931), provided that the authorized "regulations shall be in accordance with a comprehensive plan."

In 1959, the Legislature repealed the 1931 enactment of Article 5, Chapter 8, as amended, and reenacted an entirely new Article 5, Chapter 8 entitled "Urban and Rural Planning and Zoning" by passing Senate Bill 264. The introductory summary of Senate Bill 264 stated that it related:

> to the development, through planning and zoning, of urban and rural areas, and providing for the creation of city and county planning commissions; for the authority of

said planning commissions to prepare comprehensive plans for the physical development of territory within its jurisdictions; for the approval of such comprehensive plans; ...; for subdivision control and plat approval; for the issuance of improvement location permits; for authority to zone both urban and rural property....

The Legislature declared that its intention in enacting this statutory scheme was to authorize municipalities to "create a planning commission to promote the orderly development [of their territories and to] ... encourage local units of government ... to plan for the future development of their communities." W. Va.Code § 8–5–1 (1959). The planning commission was obligated to "make and recommend for adoption to the governing body of the [municipality] ... a comprehensive plan for the physical development of the territory within its jurisdiction." W. Va. Code § 8–5–16 (1959). *See also,* W. Va.Code § 8–5–28 (1959) (obligating a municipal planning commission to "adopt a comprehensive plan for the development of the city ...."). The term "comprehensive plan" was defined as:

> a complete comprehensive plan or any of its parts such as a comprehensive plan of land use and zoning, of thoroughfares; of sanitation; of recreation, and other related matters, and including such ordinance or ordinances as may be deemed necessary to implement such complete comprehensive plan or parts thereof by legislative approval and provision for such regulations as are deemed necessary and their enforcement[.]

W. Va.Code § 8–5–3(8) (1959). Unlike W. Va.Code § 8–5–28 (1959), which required a municipality to have adopted a comprehensive plan as a precondition to its exercise of authority to control subdivisions, W. Va.Code § 8–5–39 (1959) did not expressly declare that the power of zoning could be exercised only after the adoption of a comprehensive plan. Rather, that section declared that the zoning powers there conferred were to be "an integral part of the planning of areas[.]" W. Va.Code § 8–5–39 (1959).

In 1969, the Legislature repealed Chapter 8, Article 5. However, the provisions governing land use and zoning were recodified in

Chapter 8, Article 24, entitled "Zoning and Planning." Provisions of the 1959 enactment cited above remained substantively the same in this 1969 enactment. In 1973, the Legislature added the adoption of a comprehensive plan and ordinance governing subdivision control as a specific prerequisite for improvement location permits so that the statute could be harmonized with W. Va.Code § 8–25–35 (1969). W. Va.Code § 8–24–36 (1973).

The statutes governing municipal land use and planning were once again repealed, revised and reenacted in Chapter 8A of the *West Virginia Code* in 2004. The significance of the existence of a comprehensive plan is emphasized throughout this legislation, including in the legislative findings which declare that "[a] comprehensive plan is a guide to a community's goals and objectives and a way to meet those goals and objectives[.]" W. Va.Code § 8A–1–1(a)(5) (2004). Accordingly, the Legislature "encourage[d] and recommend[ed] ... [that a] comprehensive plan should be the basis for land development and use, and be reviewed and updated on a regular basis [and] ... [t]hat planning commissions prepare a comprehensive plan and governing bodies adopt the comprehensive plans[.]" W. Va.Code § 8A–1–1(b)(3), (5) (2004). The 2004 legislation defines "comprehensive plan" as "a plan for physical development, including land use, adopted by a governing body, setting forth guidelines, goals and objectives for all activities that affect growth and development in the governing body's jurisdiction." W. Va. Code § 8A–1–2(c) (2004). *See also*, W. Va. Code § 8A–3–1 (2004) (detailing the purpose and goals of a comprehensive plan); W. Va. Code § 8A–3–4 (2004) (setting forth mandatory components of a comprehensive plan); and W. Va.Code § 8A–3–5 (2004) (stating optional components of a comprehensive plan).

With respect to zoning,[3] the 2004 legislation authorizes the governing body of a municipality to "regulate land use within its jurisdiction by: (1) *Adopting a comprehensive plan;* (2) working with the planning commission and the public to develop a zoning ordinance; *and* (3) enacting a zoning ordinance." W. Va.Code § 8A–7–1(a) (2004) (emphasis added). Similar language is used with respect to a municipality's authority to regulate subdivisions and land development through ordinances. *See* W. Va.Code § 8A–4–1 (2004) (requiring adoption of a comprehensive plan *and* an ordinance). Thus, in 2004, the Legislature made clear that a municipality may not enact a valid zoning ordinance without also adopting a comprehensive plan.

In summary, both the 1931 and 2004 legislative enactments governing municipal planning and zoning clearly require the adoption of a comprehensive plan before a municipality may exercise its zoning powers. The 1959 and 1969 legislative enactments, however, refer to a comprehensive plan with respect to zoning, but do not contain the mandatory precondition language similar to that contained in the 1931 and 2004. The 1959, 1969 and 2004 enactments do, however, contain such mandatory language when discussing regulation of subdivisions, a topic not addressed in the 1931 enactment.

What is not clear under the provisions of the 1959 and 1969 enactments is whether municipalities were required to adopt a comprehensive plan *before* they undertook to exercise the zoning powers therein given to them. This lack of clarity is highlighted by the inclusion of the phrase, "[a]fter a comprehensive plan ... [has] been adopted by the governing body of the municipality", which is in the 1959 and 1969 enactments as a precondition to the exercise of the powers to control subdivision development, W. Va.Code § 8–5–28 (1959) and W. Va.Code § 8–24–28 (1969), and which is also in the 1973 enactment as a precondition to the exercise of powers to regulate structures and their location, W. Va.Code § 8–24–36 (1973). The phrase was not specifically included, however, in the 1959 and 1969 enactments as a precondition to the exercise of zoning powers.

It might therefore be argued that the Legislature intended by the inclusions and the

---

**3.** The term "zoning" is statutorily defined as "the division of a municipality or county into districts or zones which specify permitted and conditional uses and development standards for real property within the districts or zones." W. Va.Code § 8A–1–2(gg) (2004).

omission not to make the adoption of a comprehensive plan a precondition to the exercise of the zoning powers. It might further be observed that, in 1973, the Legislature specifically amended the 1969 enactment to make the adoption of a comprehensive plan a precondition to the exercise of the powers to regulate structures and their location, but, for whatever reason, did not also include that precondition to the exercise of zoning powers. In other words, it may be argued that the inclusion by the Legislature of the express preconditions in two settings necessarily negates implying the precondition in the third setting. When one considers, however, other language in the 1969 enactment and in the title to the 1959 enactment, the argument with respect to legislative intent becomes not only less plausible but unconvincing.

Before the Legislature enacted the 1973 legislation to include the above quoted phrase as a precondition to the exercise of the powers to regulate structures and their location through the issuance of improvement location permits in W. Va.Code § 8–24–36 (1969), the 1969 enactment generally contained no language linking the exercise of those powers to a comprehensive plan. As previously noted, that was not the case with respect to the exercise of zoning powers. Both W. Va.Code § 8–5–39 (1959) and W. Va.Code § 8–24–39 (1969) stated that the zoning powers therein authorized were to be deemed "an integral part of the planning of areas" so that certain specified objectives would be lessened or avoided, and so that other specified objectives would be promoted, all so that the objective set forth in W. Va.Code § 8–24–1 (1969) could be further accomplished. The term "integral" is defined as "of, pertaining to, or belonging as a part of the whole; constituent or component ... necessary to the completeness of the whole[.]" 990 *Random House Webster's Unabridged Dictionary* (2d. Ed.1998). Thus, it is apparent that the Legislature regarded zoning authority as an essential part of the authority provided to municipalities to "comprehensive[ly] plan for the physical development of the territory within their jurisdictions." W. Va.Code § 8–24–16 (1969).

Similarly, a comprehensive plan was described as being "an integral part of the enactment of zoning" by this Court in *Harrison v. Town of Eleanor*, 191 W.Va. 611, 618, 447 S.E.2d 546, 553 (1994). In *Harrison*, the Court, after noting that the Town of Eleanor had never undertaken to establish either a planning or zoning commission or to enact a comprehensive plan, stated that "[t]his fact establishes additional support for [the ordinance at issue therein] being a building rather than a zoning ordinance, given that the implementation of these statutory mechanisms [W. Va.Code § 8–24–1, *et seq.* (1969) ] necessarily relate to and are an integral part of the enactment of zoning." *Harrison*, 191 W.Va. at 618, 447 S.E.2d at 553. The appellee therein had contended that the ordinance at issue was a zoning ordinance rather than a building ordinance governed by the provisions of W. Va.Code § 8–12–13(a)(1)(1990). The Court relied upon the fact that the town had not enacted a comprehensive plan as evidence that the ordinance was a building ordinance rather than a zoning ordinance thus recognizing that the enactment of a comprehensive plan was essential to the enactment of a zoning ordinance.

In *Singer v. Davenport*, 164 W.Va. 665, 668, 264 S.E.2d 637, 640 (1980), this Court noted that under the statutory scheme "the comprehensive plan is to be used by the Planning Commission to aid them in drawing up their subdivision ordinances. The comprehensive plan was never intended to replace definite, specific guidelines; instead it was to lay the groundwork for the future enactment of zoning laws." The Court agreed with a statement contained in the comprehensive plan before it that the "single most important tool for Plan implementation is the zoning ordinance" and concluded that "the comprehensive plan is merely the foundation for the control of future development and growth[.]" *Singer*, 164 W.Va. at 668, 264 S.E.2d at 640.

Further support for the proposition that a zoning ordinance was a statutorily authorized mechanism for carrying out a comprehensive plan is to be found in W. Va.Code § 8–24–47 (1969), which declares that "[a]mendments, supplements or changes of the rules and

regulations of the zoning ordinance shall be considered as amendments to the comprehensive plan." The word "the" is a definite article "used, esp. before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article *a* or *an* [.]" 1965 *Random House Webster's Unabridged Dictionary* (2d. Ed.1998). Thus, when W. Va. Code § 8–24–47 (1969) makes reference to "the comprehensive plan," it is referring to the particular comprehensive plan adopted by the municipality. This Code section does not make reference to "a comprehensive plan," or to "a comprehensive plan, if any, adopted by the municipality." The article "the" denotes something in existence and that the Legislature intended that a municipality adopt a comprehensive plan either as part of, prior to, or contemporaneously with, the adoption of a zoning ordinance.

In titling of the 1959 enactment "Urban and Rural Planning and Zoning", the Legislature plainly described its Act as relating to the development, planning and zoning of urban and rural areas. Since the 1969 enactment was largely a recodification of the 1959 enactment, that title also expresses the intent of the Legislature with respect to the recodified provisions of the 1959 Act. Thus, the Legislature expressed its intent that the development of urban and rural areas was to be attained through the dual mechanisms of planning and zoning, rather than the singular mechanism of either planning or zoning. Also, the stated legislative intent in 1959 was to authorize municipalities to create planning commissions in order to promote a planned, orderly, future development. W. Va.Code § 8–5–1 (1959).

*Corpus Juris Secondum* sets forth an excellent description of the relation between zoning and planning. Therein it states:

Zoning is concerned primarily with the use of property, while planning is broader in scope and connotes the development of a community.

While the terms "zoning" and "planning" may be considered so closely akin as to constitute a single concept, and they are sometimes used interchangeably, in actuality the terms are not synonymous or inter-changeable. Master planning is distinguishable from zoning, both in cause and effect, since they serve different purposes. Zoning is concerned with whether a particular area of a community may be used for a particular purpose, but planning is broader in its concept. Planning contemplates the implementation of an overall program or design of the present and future physical development of the total area and services of an existing or contemplated municipality, while zoning is part of an end result or product of planning, since it is through the medium of zoning regulations that the gains and objectives of planning may be carried to fruition. Thus, planning embraces zoning, but the converse is not true.

\* \* \*

Comprehensive plans and zoning ordinances are two separate tools to be used in the scheme of municipal land utilization, in that zoning is the means by which the comprehensive plan is effectuated. A land use plan is simply a basic scheme generally outlining planning and zoning objectives in an extensive area and is not conclusive of the use that can be made of the land involved. Although a planning commission may recommend all kinds of desirable approaches to land utilization and development, not all of these may become eventually enforceable in a zoning ordinance. However, a municipality may establish a comprehensive land use plan and effectuate that plan through a scheme of comprehensive zoning regulations.

In zoning and planning, the comprehensive plan is the policy statement, and it is zoning ordinances that have the force and effect of law. A city's zoning ordinance is the law, and its comprehensive development plan is not. A comprehensive plan is not a legally controlling zoning law, but serves as a guide to local government agencies charged with making zoning decisions. Nonetheless, zoning ordinances are required to conform to and implement development plans, and where a general plan is in effect when a zoning ordinance is passed, the ordinance may be invalid if it conflicts with the plan.

101A C.J.S. *Zoning & Land Planning* § 4 (2008) (footnotes omitted).

The 1969 enactment did not require that a municipality adopt a comprehensive plan. *See* W. Va.Code § 8–24–22 (1969) (authorizing municipality to reject plan and requiring statement of reasons for rejection). If a municipality then decided not to enact a comprehensive plan and we were to interpret the applicable statutes as allowing the municipality, nevertheless, to exercise zoning powers provided therein, we would have the anomaly of a municipality having been authorized to exercise zoning powers, but without the powers respecting subdivision control, approval of plats and replats, and of regulating structures and their location through the issuance of improvement location permits all of which statutorily require "a comprehensive plan . . . [to] have been adopted[.]" W. Va.Code § 8–24–28 (1969), W. Va.Code § 8–24–36 (1973).

■ A municipality which adopted a comprehensive plan as a policy statement for its physical development was authorized by the 1969 enactment to implement the plan through subdivision control, improvement location permits and zoning. We are thus of the opinion, and therefore hold, that the 1969 planning and zoning enactment, W. Va.Code §§ 8–24–1, *et seq.*(1969), when considered in its entirety and as interpreted by this Court in *Harrison, supra,* required a municipality to adopt a comprehensive plan either as part of, prior to, or simultaneously with, the adoption of a zoning ordinance in order for the municipality to exercise the zoning powers therein provided. Were we not to so hold, we would have the further anomaly of the Legislature having imposed such requirement in the period from 1931 to 1959 and in the period subsequent to June 10, 2004, but not in the period from June 11, 1959, to June 10, 2004. We do not find that such was the intent of the Legislature. In view of our holding, the Town of Paw Paw's 1972 zoning ordinance is not saved by the provisions of W. Va.Code § 8A–7–12 (2004) because it was not legally adopted under the 1969 enactment. Accordingly, it is invalid and unenforceable.

## IV.

## CONCLUSION

For the reasons stated above, we reverse the Circuit Court of Morgan County's June 4, 2007, order and remand this matter for entry of an order granting summary judgment to the Appellant on the basis that the 1972 zoning ordinance at issue is invalid.

Reversed and Remanded

Justice ALBRIGHT not participating.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

Senior Status Justice McHUGH not participating.

STARCHER, J., concurring.

(Filed Dec. 30, 2008)

I reluctantly concur with the majority opinion's reading of our zoning laws, but I wish to point out an additional facet absent from the majority opinion: reason and fairness.

The appellant in this case owned seventy acres of land within the town limits of Paw Paw, West Virginia (a town of 497 people in 2007). The zoning rules at issue prohibited the appellant from doing *anything* to develop his land. The zoning restrictions, in effect, deprived the appellant of *any* ability to derive any value from his land.

The law prefers a clear, bright-line rule. But it also prefers a reasonable, balanced and fair rule. The zoning restrictions placed on the appellant's land did not appear to be based on reason and fairness, and there was nothing in the record to explain why such a rule was anything other than arbitrary.

I believe that the majority opinion in the instant case reflects the sense of unfairness to the situation faced by the appellant. Had the appellee treated the appellant differently, and created a record showing a somewhat more reasonable approach to land use, the

Court's result might have been quite different.

In all other respects, I concur.