G-M REALTY, INC.

*v.*

CITY OF WHEELING, *et al.*

(No. 12038)

Submitted April 18, 1961.    Decided June 6, 1961.

361

*George G. Bailey, Jeremy C. McCamic,* for plaintiffs in error.

*Handlan, Garden, Matthews & Hess, Lester C. Hess,* for defendant in error.

GIVEN, JUDGE:

In this proceeding, a writ of error to a judgment of the Circuit Court of Ohio County entered on September 26, 1959, we are required to determine whether a zoning ordinance of the City of Wheeling so discriminates against rights or property of the plaintiff, G-M Realty, Inc., as to render the ordinance invalid in so far as it applies to or affects such rights or property. The circuit court found and held that the ordinance did so discriminate against the property of plaintiff, and awarded a writ of mandamus requiring the City of Wheeling and Andrew J. Prudhome, Building Official of the City of Wheeling, "to grant a Permit for the erection of the Gasoline Service Station Building as prayed for".

The ordinance in question was adopted by the city council in 1946. Included in the ordinance were provisions classifying or zoning several described districts or areas, including "Commercial A" and "Commercial B" zones. The only material difference between the two zones is that gasoline service stations are prohibited in Commercial A, but are permitted in Commercial B. The property here involved is situated entirely within Commercial A zone.

The real estate in question, designated or "numbered 178 to 188, 29th Street", was conveyed to plaintiff in 1956 for a consideration of $25,000.00. The present income therefrom is $153.79 per month, being rental for residence type buildings. It is alleged that the annual income from the property, in the event the gasoline service station is permitted, will be approximately $6,000.00 per annum, but the cost of the construction of the improvements, if permitted, is not established.

The property fronts on the south side of 29th Street, apparently more than two thousand feet east of the intersection of Eoff Street with 29th Street. Eoff Street is the first street east of Chapline Street. State Route No. 2 presently follows 29th Street through Wheeling, at least as to the part of 29th Street here material. The nature of the present use of 29th Street in the immediate and general area of the property is well illustrated by the following quotation from the petition filed in the circuit court: "* * * proceeding westwardly from the intersection of McColloch Street and Twenty-ninth Street; a pizza store, a Sears-Roebuck warehouse, which is immediately adjacent to the Air Reduction Company plant, which faces on 29th Street, the Nolte Baking Company Plant, a large A&P Super Market with a drive-in and parking area, a railroad street crossing, a Tastee Freeze establishment, the Schroeder Casket Company plant, the wholesale plant of City Building Supply Company, the intersection of Jacob Street and 29th Street, the plant of the Hitt Heating and Air Conditioning Company, and the Wheeling Auto Seat Cover Company plant; that on the same south side of Twenty-ninth Street and proceeding eastwardly from said McColloch Street intersection towards Petitioner's property are the following: a corner beer parlor and confectionery, the Gramlich Plumbing Shop and sales room, the plant of Power Brake Company, with a large drive-in area, a brake service and general truck repair service, a vacant lot, and several residences; that on the south side of 29th Street and proceeding eastwardly from Petitioner's

property are the following: the storeroom of Dixon Oil and Supply Co., which retails auto grease and allied items, a residence, a shoe repair shop, several residences, a presently vacant storeroom, the Silver Rail Bar, a food store, a barber shop, a grocery store, an auto repair garage, and Companion Products Company aluminum products plant; that on the north side of 29th Street, and in the area near to Petitioner's property there is a beer parlor, a confectionery store, a dry cleaning plant and fur and clothing storage plant, a farm dairy market, a grocery store, and another dry cleaning plant, and a beer parlor.''

It may be noticed that no gasoline service station is within the immediate vicinity of, or even near, the location of the property involved. Two gasoline service stations occupy the northerly side of 29th Street between Chapline Street and Eoff Street, and one such station is located on the opposite side of 29th Street, at the southeast corner of 29th Street and Chapline Street. And one such station occupies the northeast corner of 29th Street and Eoff Street. Each of such stations either adjoins a station or is situated immediately opposite such a station. They are all within Commercial B zone, though one of such stations, the one at the southeast corner of Chapline Street and 29th Street, was permitted by an amendment to the city ordinance. The station nearest the property involved is more than two thousand feet west thereof.

Two witnesses, familiar with the methods of operation of gasoline service stations, and especially familiar with questions relating to the frequency of fires, explosions and accidents occurring at or because of the operation of such stations, as compared with such happenings occuring at or in the operation of other types of businesses, testified on behalf of plaintiff. This testimony apparently establishes that fires, explosions or accidents occur less frequently at such stations than at most other types of businesses. Yet the testimony reveals that the infrequency of such happenings at such stations results, in large part, at least, from the

caution and training of the employees operating such stations, revealing, perhaps, the fact generally believed that potential danger is always present in certain products handled at such stations.

As will be noticed, no question is presented as to the right or power of the city to adopt the ordinance involved, the property owner contending that "the only issue before the lower court, and here, is whether the ordinance, insofar as it applies to the property of plaintiff, is arbitrary and unreasonable, and, to that extent, is invalid and of no legal force or effect".

Though an ordinance may be valid in its adoption, and may fall within the police power vested in the city council, it may be invalid as it applies to or affects certain property, because of arbitrariness or as being unreasonably discriminatory. *Carter v. City of Bluefield*, 132 W. Va. 881, 54 S. E. 2d 747. See *Sudduth v. Snyder, Mayor*, 120 W. Va. 746, 200 S. E. 55; *State ex rel. Johnson v. City of Charleston*, 91 W. Va. 318, 112 S. E. 577; *Zahn v. Board of Public Works*, 274 U. S. 325, 47 S. Ct. 594, 71 L. ed. 1074.

The operation of gasoline service stations is a legitimate business, one which can not be prohibited unless prohibition thereof is necessary or proper in the regulation or protection, under the police power, of the health, safety, morals or general welfare of that part of the public affected. A gasoline service station is not a nuisance per se. *Central National Bank v. City of Buckhannon*, 118 W. Va. 26, 188 S. E. 661. Yet it must be pointed out, the nature of such a business, and especially of some of the products handled and sold in the operation thereof, makes it easily and clearly distinguishable from any other type of business, as related to health and safety. Gasoline, in certain circumstances, at least, is highly inflammable, and explosions therefrom do sometimes occur. It can hardly be questioned that, in usual circumstances, the location of such a station increases traffic in that particular location, thus creating traffic hazards, danger from

accidents, and unstifled and unmuffled noises. See Annotation, 75 A.L.R. 2d 168. The cases cited in the annotation make it clear, we think, that the classification of gasoline service stations in the manner provided by the pertinent ordinance was based on sufficient and proper grounds. But the question of whether the ordinance is arbitrary or unreasonably discriminates against the particular property remains for decision.

After careful review of the facts, not actually in dispute, and the circumstances pertinent to the question, we have reached the conclusion that enforcement of the ordinance constitutes no unreasonable or unlawful discrimination against the property or rights of plaintiff, and that enforcement of the provisions of such ordinance does not constitute any arbitrary or capricious action on the part of the City of Wheeling. That conclusion can hardly be questioned as it applies to plaintiff's property and other gasoline service stations, for it is not shown that any gasoline service station is within two thousand feet of plaintiff's property. The more serious question results when the separation of all gasoline service stations from other types of commercial businesses, as to the particular zone, is considered. As pointed out, however, the classification is justified, in reason and by the authorities, because the actual or potential hazards of such stations are of such character as to affect the health, safety and general welfare of the residents of the city. *Zahn v. Board of Public Works*, 274 U. S. 325, 47 S. Ct. 594, 71 L. ed. 1074; 101 C.J.S., Zoning, Section 59. In 101 C.J.S., Zoning, Section 2, it is stated: "Zoning regulations are designed to create permanent conditions throughout a municipality. They take care of problems of the present, as by protecting districts already established; but zoning is not, or cannot be, static, and zoning ordinances are not restricted to the regulation of conditions in the immediate present, and they may, and frequently do, look to the future or deal with conditions in the future, to the extent that such conditions can be reasonably anticipated. So, these

regulations may be intended to guide the future development and uses of land in certain areas and to protect such areas during transition periods in connection with anticipated further development; good zoning connotes community development in accordance with consistent plans and policies of the legislative body.''

There appears no doubt that the effects of such ordinance do, to some extent, lessen the value and limit the free and independent use of plaintiff's property. That, however, does not afford the test of unreasonable discrimination. No doubt rights and privilges of some individuals are to some extent limited or controlled by every such zoning ordinance. The spacious and indefinable breadth of the police power, though not entirely without constitutional limitations, permits reasonable restrictions of the rights and privileges of the individual for the needed protection of the health, safety, morals or general welfare of all. Due process, of course, requires that no unreasonable discrimination exist, but in the instant case no person is allowed to construct a gasoline service station within the prohibited area, while the plaintiff, or no other person, is denied the right to construct a building or to operate a business therein which falls within the class of businesses permitted by the ordinance. All are treated alike. See *Village of Euclid v. Ambler Realty Co.*, 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A.L.R. 1016; 101 C.J.S., Zoning, Section 15.

The determination of the necessity for or the nature of a zoning ordinance is a function of the legislative department of the government, though the courts cautiously, and with prudent regard for the rights of the individual, must determine whether an ordinance, or, for that matter, any other legislative enactment, constitutes a violation of due process, or for any reason is violative of any constitutional provision, when such a question is properly presented. That department possesses the facilities, or may obtain the same, for determining the wisdom of or necessity for such a

law, and its probable effects on the health, safety, morals and general welfare of the people of the municipality, including the necessity for shaping a program or the planning for future improvement or growth of the municipality. For such reasons courts are not disposed to declare ordinances invalid, in whole. or in part, "where the question whether they are arbitrary or unreasonable is fairly debatable". *Carter v. City of Bluefield,* 132 W. Va. 881, 54 S. E. 2d 747. See *Zahn v. Board of Public Works,* 274 U. S. 325, 47 S. Ct. 594, 71 L. ed. 1074; *Gorieb v. Fox,* 274 U. S. 603, 47 S. Ct. 675, 71 L. ed. 1228, 53 A.L.R. 1210; 58 Am. Jur., Zoning, Section 16.

In *Carter v. City of Bluefield, supra,* it was carefully pointed out that "When the validity of the restrictions imposed by a zoning ordinance is challenged each case should be determined on its own particular facts", and in the *Village of Euclid* case, *supra,* the United States Supreme Court stated: "Building zone laws are of modern origin. They began in this country about twenty-five years ago. Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the

new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise * * *".

It may be proper to add that in this "changing world" the increase in the density of population, the modern methods of living, and the greater need for larger and more effective means or methods of protecting the health, safety, morals and general welfare of all the people, are creating a need and demand for such restrictions throughout rural areas, as well as within urban areas. See *Farley v. Graney, State Road Commissioner*, 146 W. Va. 22, 119 S. E. 2d 833; *West Virginia Water Service Co. v. Cunningham*, 143 W. Va. 1, 98 S. E. 2d 891; *State v. Stahl*, 141 W. Va. 233, 89 S. E. 2d 693.

For the reasons herein pointed out, the judgment of the Circuit Court of Ohio County, awarding plaintiff a writ of mandamus against the City of Wheeling and Andrew J. Prudhome, Building Official of the City of Wheeling, must be reversed.

*Reversed.*