IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

No. 18-1134

**FILED**
**September 29, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CITY OF MORGANTOWN,

Defendant Below/Petitioner

v.

CALVARY BAPTIST CHURCH,

Plaintiff Below/Respondent

Appeal from the Circuit Court of Monongalia County
The Honorable Susan B. Tucker, Judge
Civil Action No. 17-C-41

AFFIRMED

Submitted:  September 2, 2020
Filed: September 29, 2020

Ryan P. Simonton, Esq.                       Joseph V. Schaeffer, Esq.
Morgantown, West Virginia                    James A. Walls, Esq.
Counsel for the Petitioner                   Morgantown, West Virginia
                                             Counsel for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." Syl. Pt. 1, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W.Va. 25, 658 S.E. 2d 555 (2008).

2.      "To invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing the relator seeks; and (3) the absence of another adequate remedy." Syl. Pt. 2, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981).

3.      "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

4.      "The enactment of a zoning ordinance of a municipality being a legislative function, all reasonable presumptions should be indulged in favor of its validity." Syl. Pt. 3, *G-M Realty Inc. v. City of Wheeling*, 146 W. Va. 360, 120 S.E.2d 249 (1961).

5.      "Generally, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. However, ostensible findings of fact which entail the application of law or constitute legal judgments which transcend ordinary factual

determinations, must be reviewed *de novo*. The sufficiency of the information presented at trial to support a finding that a constitutional predicate has been satisfied presents a question of law." Syl. Pt. 1, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996).

6.      In a proceeding in mandamus where the validity of a zoning ordinance of a municipality, as applied to a particular piece of land, is attacked as an arbitrary and unreasonable exercise of police power, the standard of review is de novo.

7.      "Under a valid statutory delegation to it of the police power of the State a municipality may enact a zoning ordinance which restricts the use of property in designated districts within the municipality if the restrictions imposed by the ordinance are not arbitrary or unreasonable and bear a substantial relation to the public health, safety, morals, or the general welfare of the municipality." Syl. Pt. 7, *Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949).

8.      "A municipal ordinance creating zoning districts and imposing restrictions upon the use of property within such districts may be valid in its general scope and broad outline but invalid to the extent that the restrictions imposed are clearly arbitrary and unreasonable in their application to particular property." Syl. Pt. 8, *Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949).

9. "A zoning ordinance of a municipality, creating use districts and imposing restrictions upon the use of the property in the various districts, which, as applied to particular property, does not bear a substantial relation to the public health, safety, morals, or general welfare of the municipality, and is clearly arbitrary and unreasonable in depriving the owner of the beneficial use of his property and in substantially depreciating its value, is as to such property, invalid as violative of Section 9 and 10, Article III of the Constitution of this State and the Fourteenth Amendment to the Constitution of the United States." Syl. Pt. 9, *Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949).

10. "If most of the factors necessary to the decision of a zoning case have both positive and negative aspects it would appear that these matters are fairly debatable, and in such case the court will not overrule the city authorities in the exercise of their legislative function." Syl. Pt. 4, *Anderson v. City of Wheeling*, 150 W.Va. 689, 149 S.E.2d 243 (1966).

11. In a challenge to the validity of a zoning ordinance as applied to a particular piece of property the relevant factors to be considered by a circuit court include the following: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of the plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public, as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for

the zoned purposes; (6) the length of time the property has been vacant as zoned, considered in the context of land development in the area in the vicinity of the property; and (7) the adopted comprehensive plan.

WORKMAN, Justice:

The Petitioner, The City of Morgantown (hereinafter "the City"), appeals an amended order entered on November 26, 2018, by the Circuit Court of Monongalia County, West Virginia, following a two-day bench trial finding that, as applied to an unimproved eighty-foot subdivided piece of property owned by the Respondent, Calvary Baptist Church (hereinafter "the Church"), the City's enforcement of its R-1 Single-Family Residential zoning classification was unconstitutional. The circuit court further ordered the City to cure the unconstitutional zoning classification of the property by amending it from a classification of R-1 Single-Family Residential to that of B-2 Service Business district which permits various commercial uses of property. The City raises two assignments of error that we must address. First, is whether the circuit court applied the appropriate standard for evaluating the challenge to the zoning ordinance and whether the circuit court considered all appropriate factors in its evaluation. Second, is whether the circuit court improperly considered past zoning decisions of the City and did so using incorrect facts. Having considered the record, the various briefs submitted, the relevant law, and the oral arguments presented, we find that the zoning ordinance, as applied to the particular property of the Church, is arbitrary and unreasonable. Therefore, we affirm the circuit court's amended order.

## I. FACTS AND PROCEDURAL HISTORY

The Church owns a parcel of property consisting of 2.43 acres in the Suncrest district of the City. It has been in an area zoned as residential since 1959 when the City

first enacted a zoning ordinance. The parcel adjoins Burroughs Street and Eastern Avenue and is just east of the intersection of Burroughs Street and Collins Ferry Road. The property contains the Church building and parking lot together with a sloped area including a stand of mature trees. In an effort to raise funds for the renovation of the sanctuary, the Church sought to develop the sloped portion of the property (hereinafter "the Partition") consisting of an unimproved ½ acre (approximately eighty-foot strip) with access onto Burroughs Street. There is no access to the side street of Eastern Avenue due to the presence of a storm drainage field. Specifically, the Church sought to complete an arrangement with long-time City businessman, Bernard Bossio, whereby Mr. Bossio would purchase the Partition for the purpose of commercial development for the sum of $250,000. However, Mr. Bossio agreed to purchase the Partition only if it was re-zoned from R-1 Single-Family Residential to commercial B-2 Service Business district.

On June 30, 2016, the Church submitted two applications to the City. In the first application, the Church sought subdivision of the property into the ½ acre Partition with the remainder being the parcel consisting of the Church building and the adjoining parking lot. In the second application, the Church sought to have the Partition rezoned from R-1 Single-Family Residential to B-2 Service Business district. Following various proceedings, the City conditionally approved a modified subdivision of the property in that a twenty-foot buffer strip was added to the northern border of the Partition. However, the City denied the request for rezoning.

2

Thereafter, on January 24, 2017, the Church filed a petition for a writ of mandamus in circuit court asserting that the rezoning application was wrongly denied because the R-1 Single-Family Residential classification of the Partition is arbitrary, unreasonable, and lacking sufficient relation to the public health, safety, morals, or the general welfare. The Church contended that the denial of the rezoning application was improper due to the facts regarding the Partition and surrounding uses and zoning such that the Church had a clear legal right to the requested rezoning of the Partition. The City filed an answer on February 21, 2017, asserting that the circuit court should decline to issue the writ and dismiss the action.

Trial was initially set for January 24, 2018, but the circuit court continued the trial and stayed proceedings pending the filing of renewed applications to the City by the Church. This occurred at the direction of the circuit court due to the apparent failure to finalize the subdivision of the Partition. The City's Planning Commission staff prepared the 2018 Staff Report recommending denial of the rezoning application, in part, because the Partition was in an area designated in the City's Comprehensive Plan as one for limited growth and neighborhood preservation. The 2018 Staff Report was more comprehensive and detailed than the 2016 Staff Report, which made no recommendation regarding the property. The City Planning Commission unanimously voted to recommend denial of the Church's renewed application for rezoning. Subsequently, the City Council unanimously voted to deny the Church's renewed application for rezoning of the Partition but approved the subdivision of the Partition. Shortly thereafter, the circuit court entered an order lifting

3

the stay, the Church amended its pleadings, and the matter proceeded to a two-day bench trial.

The evidence presented by the Church at trial was that other properties in the vicinity of the Partition were already zoned as B-2 Service Business district. To the immediate west of the Partition is a horseshoe-shaped development called Burroughs Place accessible from Burroughs Street with two, two-story commercial buildings on each side and a five-story mixed-use building in the rear. One of the commercial buildings runs along the bulk of the property line with the Partition. A parking lot for the five-story mixed-use building runs along the remainder of the Partition property line. The evidence was that car headlights shine onto the Partition from cars in the parking lot and residents of the mixed-use building's upper story have a view of the Partition. Additionally, the Suncrest Pub, a bar, and Slight Indulgence, a specialty foods store, sit past Burroughs Place along Collins Ferry Road to the west. Burroughs Place, Suncrest Pub, and Slight Indulgence are each zoned as B-2 Service Business district. Collins Ferry Road is a commercial node.

Joint stipulations of the parties established that Burroughs Place was partly in an R-1 Single-Family Residential district and partly in a B-1 Neighborhood Business district until 2003 when a zoning reclassification placed it entirely in the B-1 commercial classification. Additionally, in 2006 through various recodifications of the City zoning code, the Burroughs Place property was changed to a B-2 Service Business district classification. The record establishes that in 2003, the Planning Commission Staff Report,

4

recommending a zoning map amendment for a portion of the Burroughs Development property as B-1 Neighborhood Business, stated that "[n]or is this strip of land likely to ever be used for single-family residential purposes, especially the portion fronting Burroughs."

To the east of the Partition lies the remainder of the Church property including the Church building and the Church parking lot. The Church building faces Burroughs Street on the south and is surrounded on three sides by the parking lot. Car headlights from that parking lot also shine onto the Partition. There is a retaining pond below a steep slope to the north. Eastern Avenue is to the east and tends to separate the remainder of the Church property from older residential properties which are zoned as R-1 Single-Family Residential.

Immediately to the south of the Partition is Burroughs Street which is a West Virginia State road. The Vintner Reserve subdivision, accessible from the side street of Munsey Avenue, and zoned R-1 Single-Family Residential, is across Burroughs Street. A restaurant and bar called The Wine Bar is located diagonally adjacent to the Partition, just across Burroughs Street. Access to The Wine Bar is from Burroughs Street and parking for customers is located to the west and to the south in the rear of the establishment. The Wine Bar is zoned commercially under the B-2 Service Business classification. It was rezoned from R-1 to a PRO classification in 2010. The PRO classification is used for residential and some office and commercial purposes. In 2011, the classification of The Wine Bar was amended to the B-2 Service Business district. Next to The Wine Bar and extending

5

west to the intersection with Collins Ferry Road is a multi-family development known as Unity House.

Immediately north of the Partition is a twenty-foot-deep strip of property that serves as a buffer between the Partition and the French Quarter subdivision which contains residences accessible from Eastern Avenue. The French Quarter subdivision zoning classification is R-1 Single-Family Residential.

The Church's appraiser, Douglas Wise, was qualified as an expert and testified that the value of the Partition under the R-1 Single-Family Residential classification was approximately $120,000, while the value as a B-2 Service Business classification was approximately $268,000. Mr. Wise acknowledged that the Suncrest neighborhood supported a realistic use of property for residential purposes and had strong demand for residential use. However, he testified that the Partition had several strikes against it including being wedged between non-harmonious development, on one side, from the Burroughs Place development and, on the other side, by the Church's building and parking lot. Mr. Wise also testified that the Partition is undesirable as residential property due to being located along and accessed via Burroughs Street which is a heavily trafficked State road. The traffic volume depresses residential value. Additionally, Mr. Wise indicated that the topography of the Partition was challenging with steep slopes to the west and to the north. He conceded that the topography would also be challenging for commercial development. The issues he identified as undesirable are reflected in the

6

reduced appraisal value for the Partition as residential use. Mr. Wise concluded that the best and highest use for the Partition would be some type of light commercial development.

Mr. Bossio, the potential purchaser of the property, testified as to his long experience in the area due to having grown up near Burroughs Street and living some fifty-three years in the area. He served on the City's Board of Zoning Appeals some twelve years and was also the chairman during some periods of service. He has developed both residential and commercial properties in the immediate and surrounding area and testified to the change in character of the area over the past two decades. Mr. Bossio specifically pointed to Burroughs Place, the Wine Bar, Unity House, Suncrest Pub and Vintner Reserve, consisting of six residences with no direct access to Burroughs Street and encompassed by vinyl fencing and shrubbery. He also testified to the traffic volume increase on Burroughs Street over the last decade. According to Mr. Bossio, if the Partition were to change to a B-2 zoning classification, a wide variety of commercial uses would be available, but larger-scale uses such as box stores like Walmart would not be feasible due to the size of the Partition. Although not qualified as an expert, Mr. Bossio testified that when he entered into the agreement with the Church to buy the Partition, he "would've never guessed in a million years that [the City] would have opposed it."[1]

---

[1] Mr. Bossio is paying the Church's legal fees in this matter.

The Church also called Christopher Fletcher as a witness. Mr. Fletcher is the Director of Development Services for the City. Mr. Fletcher generally explained the zoning classifications and conforming uses dictating what property owners may and may not do with property. He also testified to the zoning application process and the various factors the City considers when reviewing an application for rezoning. The considered factors include, among other things, the Comprehensive Plan, the physical character of the site, the surrounding environment, compatibility uses, traffic management, potential property driveway entrances, potential sightlines, safety, and traffic volume. Mr. Fletcher acknowledged that in 2003, in connection with rezoning the Burroughs Place development property, which is immediately adjacent to the Partition, the City Planning staff report provided that the parcel was not "likely to ever be used for single family residential purposes, especially the portion fronting Burroughs." Additionally, Mr. Fletcher acknowledged that in connection with the 2010 zoning revision of the Wine Bar, located directly across Burroughs Street from the Partition, the City Planning staff observed that "there have been major economic, physical, and social changes to the degree of substantially altering the basic characteristics of the subject area to the extent that a zoning reclassification is justified."

Mr. Fletcher also discussed the 2018 Staff Report which indicated that the prominent development activity in the area since 1998 reflected the neighborhood's single-family residential classification and provided that rezoning the Partition would be inconsistent with the area's development pattern and the limited growth and neighborhood

conservation concepts of the Comprehensive Plan. Mr. Fletcher further testified that the City relied on the Comprehensive Plan adopted in 2013. He explained that the Comprehensive Plan was an eighteen-month project involving three consulting firms and data collected from West Virginia University and businesses in the City. There were several rounds of public workshops and forums. Interviews were conducted with allied stakeholders and the public in order to identify ideas to improve the built environment, make the City more attractive, and promote continued economic growth. The City concluded that it needed to plan for a 40,000-person population increase by 2040. From that conclusion, the City proceeded to determine what areas were suitable for further development and what areas should be left alone for single-family use. There were two areas identified for neighborhood conservation. The Partition is within one of the two neighborhood conservation areas.

Mr. Fletcher also testified that there are twelve single-family homes with direct access on Burroughs Street and he identified thirty-three building permits issued in the past twenty years for residences in the area. However, of the thirty-three permits, only one had been issued in the last five years and only six had been issued in the last ten years. Mr. Fletcher acknowledged that only one residential property has direct access to Burroughs Street, and it is set far back from the Street. Notably, Mr. Bossio developed that particular property and situated it some 100 to 200 feet back from Burroughs Street. Additionally, Mr. Fletcher agreed that none of the residential properties is wedged between commercial developments and a church with an adjoining parking lot.

9

In accord with the 2018 Staff Report and the Comprehensive Plan, Mr. Fletcher testified that a change in the Partition's zoning classification would be inconsistent with the limited growth and neighborhood conservation goals established in the Comprehensive Plan. He further testified that a zoning classification change would result in an unplanned expansion of the commercial node surrounding Collins Ferry Road, which could jeopardize the integrity of the residential area and compromise the quality of life of the existing residents. Mr. Fletcher referred to the Comprehensive Plan as a series of principles rather than binding law.

The final witness was David Harkins, who testified in his capacity as a deacon and former trustee of the Church. According to Mr. Harkins, without the rezoning of the Partition, the Church would be unable to complete the renovations on the sanctuary of the Church building due to the lack of financial resources.

The circuit court entered its amended order on November 26, 2018. The court reviewed the evidence presented and concluded that it was clear and undisputed that properties near the Church and properties adjacent to the Church were being used for various commercial, multi-family, or other non-single-family residential purposes. The court found that if the Partition remains classified as R-1 Single-Family Residential, the contract regarding the Partition for sale to Mr. Bossio will fail. Additionally, the court concluded that it was not likely that any residence will be built on the property in the future due to the privacy and topography issues. The court determined that the City contributed

10

to the issues because it rezoned the adjacent property containing the Burroughs Development and the Wine Bar located directly across the street. Additionally, the court, based on Mr. Fletcher's testimony regarding differences between the Staff Reports of 2016 and 2018, concluded that the City "looked for reasons to deny" the Church's application and interfere with the "current neighborhood scheme." The reasons advanced by the City for denial of the rezoning application were characterized by the court as not only arbitrary and capricious but, also, disingenuous, utterly misleading, and manufactured. The court rejected the City's reliance on the Comprehensive Plan due to Mr. Fletcher's testimony and concession that the Comprehensive Plan was not binding law. Accordingly, the court determined that the City's enforcement of the R-1 Single-Family Residential zoning classification was unconstitutional. Further, it ordered that the City must cure the constitutional violation by amending the zoning classification of the Partition from that of R-1 to the B-2 Service Business district.

It is from the amended order of the circuit court that the City appeals to this Court.

## II. STANDARD OF REVIEW

The parties disagree as to the standard of review to be applied in this appeal. The City argues that the underlying proceeding was grounded in a mandamus action such that a de novo standard of review applies. It is asserted that zoning ordinances are presumed to be constitutional and the burden is on the party challenging the ordinance to

11

prove by clear and convincing evidence that the ordinance is arbitrary and capricious. Further, the City contends that review of a circuit court decision invalidating a zoning ordinance presents a question of law requiring a de novo standard of review.

On the other hand, the Church argues that the ruling of the circuit court was made following a bench trial such that there should be a two-pronged deferential standard of review applied. Specifically, the Church argues that the order and disposition are reviewed under an abuse of discretion standard and the underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are to be reviewed under a de novo standard of review.

While the circuit court did not explicitly set out the standards for granting relief to the Church, the amended order functioned as a grant of mandamus in ordering that the failure of the City to rezone the Partition was unconstitutional and directing that the City change the classification of the Partition. Indeed, the action was brought by the Church as a petition for a writ of mandamus.

This Court has long and definitively held that "[a] *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." Syl. Pt. 1, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W.Va. 25, 26, 658 S.E. 2d 555, 556 (2008). Moreover, "[t]o invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing the relator seeks;

and (3) the absence of another adequate remedy." Syl. Pt. 2, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981). This Court observes that "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 139, 459 S.E.2d 415, 416 (1995).

It does not appear that prior jurisprudence of this Court addressing zoning ordinances plainly articulated a standard of review. However, it is clear that this Court engages in a de novo analysis in reviewing decisions of the lower courts involving the application of zoning ordinances to property use. In *Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949), a mandamus action, this Court considered the validity of a zoning ordinance, as applied to a parcel, and reversed the circuit court's conclusion that it was constitutionally valid. In so doing, this Court undertook its own review and evaluation of the record and the law, giving little deference to the findings of the circuit court. Such an analysis constituted a de novo review even though no standard was specifically enunciated.

At its core, the Church's position is that because there was a bench trial, the standard of review must necessarily be deferential. However, the Church sought to compel the City to discharge a duty in the form of rezoning the Partition. We observe that as broad exercises of police powers, local zoning ordinances are rebuttably presumed to be valid. This Court has held that "[t]he enactment of a zoning ordinance of a municipality being a

13

legislative function, all reasonable presumptions should be indulged in favor of its validity." Syl. Pt. 3, *G-M Realty Inc. v. City of Wheeling*, 146 W. Va. 360, 361, 120 S.E.2d 249, 250 (1961). The analysis here necessarily requires an interplay between the application of law in the form of a valid municipal zoning regulation together with consideration of constitutionally grounded private property rights. We must bear in mind the following instructive principles:

> Generally, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. However, ostensible findings of fact which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo*. The sufficiency of the information presented at trial to support a finding that a constitutional predicate has been satisfied presents a question of law.

Syl. Pt. 1, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 210, 470 S.E.2d 162, 164 (1996).

Thus, based on the foregoing, this Court holds that in a proceeding in mandamus where the validity of a zoning ordinance of a municipality, as applied to a particular piece of land, is attacked as an arbitrary and unreasonable exercise of police power, the standard of review is de novo.

Having determined that our review is plenary in all respects, this Court now turns to consideration of the issues presented.

14

## III. DISCUSSION

As this Court proceeds to consider the issues, we must bear in mind the basic principles regarding zoning and comprehensive planning as used by municipalities. The West Virginia Legislature first authorized municipal planning and zoning in 1931.[2] *See* W. Va. Code § 8-5-1 (1931). The power to divide the municipal territory into various types of shapes and purposes was contingent upon having a comprehensive plan. *Id*. § 8-5-3. A comprehensive plan is statutorily defined as "a plan for physical development, including land use, adopted by a governing body, setting forth guidelines, goals and objectives for all activities that affect growth and development. . . ." *Id*. § 8A-1-2(c) (2017). We observe that "[t]he general purpose of a comprehensive plan is to guide a governing body to accomplish a coordinated and compatible development of land and improvements within its territorial jurisdiction, in accordance with present and future needs and resources." *Id*. § 8A-3-1(a) (2017). Additionally, "[a] comprehensive plan must promote the health, safety, morals, order, convenience, prosperity and general welfare of the inhabitants, as well as efficiency and economy in the process of development." *Id*. § 8A-3-1(c). The Legislature spelled out the required components and procedures for the development and implementation of comprehensive plans. Specifically, a comprehensive

---

[2] The legislative authorizations have changed over time and may be found at present in West Virginia Code §§ 8A-3-1 to -14 (2017) as to comprehensive plans and at West Virginia Code §§ 8A-7-1 to -13 (2017) as to zoning.

plan sets the "goals and objectives for land development, uses and suitability." *Id*. § 8A-3-1(d)(1).

While comprehensive plans and zoning go hand-in-hand, they are not synonymous in concept or function. Planning is broader and more "big picture" in nature, while zoning focuses on particular areas and purposes. Zoning is defined as "the division of a municipality or county into districts or zones which specify permitted and conditional uses and development standards for real property within the districts or zones." W. Va. Code § 8A-1-2(gg). A municipality may regulate land use and enact a zoning ordinance by adopting a comprehensive plan and working with the planning commission and with the public to develop a zoning ordinance. *Id*. §§ 8A-7-1(a)(1), (2), (3) (2017).

Since the inception of legislative authority for municipal planning and zoning in 1931, comprehensive plans have been a significant part of the authority to classify and zone property uses. The comprehensive plan is the foundation for development and growth. In *Largent v. Zoning Bd. of Appeals for the Town of Paw Paw*, 222 W.Va. 789, 671 S.E.2d 794 (2008), this Court recognized:

> In zoning and planning, the comprehensive plan is the policy statement, and it is zoning ordinances that have the force and effect of law. A city's zoning ordinance is the law, and its comprehensive development plan is not. A comprehensive plan is not a legally controlling zoning law but serves as a guide to local government agencies charged with making zoning decisions. Nonetheless, zoning ordinances are required to conform to and implement development plans and where a

16

general plan is in effect when a zoning ordinance is passed, the ordinance may be invalid if it conflicts with the plan.

*Id.* at 795, 671 S.E.2d at 801 (citing 101A C.J.S. *Zoning & Land Planning* 4 (2008) (footnotes omitted)).

Having considered the statutory provisions governing comprehensive planning and zoning, we now turn to our substantive jurisprudence. *Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949), is the seminal case in West Virginia jurisprudence addressing zoning ordinances. *Carter* involved a mandamus proceeding wherein the petitioners sought to compel the City of Bluefield to grant them a permit to erect a two-story retail building in compliance with the building code, but in a zone restricted to residential purposes. The petitioners challenged the validity of the ordinance as it affected their property.

In three syllabus points the Court established the guiding principles to be applied in addressing the application of zoning ordinances to particular pieces of property. First, the Court held that restrictive zoning ordinances may be enacted by municipalities as follows:

> Under a valid statutory delegation to it of the police power of the State a municipality may enact a zoning ordinance which restricts the use of property in designated districts within the municipality if the restrictions imposed by the ordinance are not arbitrary or unreasonable and bear a substantial relation to the public health, safety, morals, or the general welfare of the municipality.

17

*Carter*, 132 W.Va. at 882-83, 54 S.E.2d at 750, Syl. Pt. 7.

Second, the Court concluded that a zoning ordinance may be broadly valid, but unreasonable as applied to a particular piece of property, holding:

> A municipal ordinance creating zoning districts and imposing restrictions upon the use of property within such districts may be valid in its general scope and broad outline but invalid to the extent that the restrictions imposed are clearly arbitrary and unreasonable in their application to particular property.

*Id*. at 883, 54 S.E. 2d at 750, Syl. Pt. 8.

Third, the Court set out the standards for evaluating a municipal zoning ordinance under attack as applied to a particular piece of property as follows:

> A zoning ordinance of a municipality, creating use districts and imposing restrictions upon the use of the property in the various districts, which, as applied to particular property, does not bear a substantial relation to the public health, safety, morals, or general welfare of the municipality, and is clearly arbitrary and unreasonable in depriving the owner of the beneficial use of his property and in substantially depreciating its value, is as to such property, invalid as violative of Section 9 and 10, Article III of the Constitution of this State and the Fourteenth Amendment to the Constitution of the United States.

*Id.,* Syl. Pt. 9. The Court further determined that where the question is whether zoning regulations are "arbitrary or unreasonable is fairly debatable," it "will not interfere with the action of the public authorities." *Id.* at 905, 54 S.E.2d at 761.

18

Having established core principles, the Court concluded that the area where the property was located consisted of industrial and business uses, was in close proximity to a railroad line and railroad yards, portions of the same block were zoned for business purposes, blocks to the east and west were zoned for business purposes and a street on one side of the property was a major thoroughfare. Accordingly, the Court found that the predominate use of property in the area was business or commercial and the parcel in question was unsuited for residential purposes. Thus, the Court concluded the petitioners were deprived of the right to use or enjoy their property for other than residential purposes. Additionally, other property owners in the area were using their property for business or industrial purposes. Depriving the petitioners the right to use their property in the same manner as others compelled the conclusion that the ordinance had no real or substantial relation to public health, safety, morals, or the general welfare of the city such that, as applied to the land of the petitioner, its validity could not be sustained. *Id.* at 907, 54 S.E.2d at 762.

Next, in *Anderson v. City of Wheeling*, 150 W. Va. 689, 149 S.E.2d 243 (1966), the Court was faced with a mandamus action seeking to change a zoning classification from a residential to a commercial classification. The Court adopted a syllabus point setting out the fairly debatable standard of analysis as identified in *Carter*. The Court held that "[i]f most of the factors necessary to the decision of a zoning case have both positive and negative aspects it would appear that these matters are fairly debatable, and in such case the court will not overrule the city authorities in the exercise of their

legislative function." *Id*. at 690, 149 S.E.2d at 245, Syl. Pt. 4. In considering the facts and applying the "fairly debatable" standard, the Court was mindful that "[t]he enactment of a zoning ordinance of a municipality being a legislative function, all reasonable presumptions should be indulged in favor of its validity." *Id.* at 699, 149 S.E.2d at 250 (quoting *G-M Realty, Inc. v. City of Wheeling*, 146 W.Va. 360, 120 S.E.2d 249 (1961), Syl. Pt. 3). Thus, the fairly debatable standard means that if the decision of the zoning authorities is fairly debatable the courts will not intervene.

In evaluating the application of the zoning classification to the property in *Anderson*, the Court concluded there were both positive and negative aspects regarding rezoning from residential to commercial and, thus, determined that the matter was fairly debatable such that it would not interfere with the city's legislative determinations. In reaching its conclusion, the Court relied on the notion that if the property were rezoned it would result in a tendency toward spot zoning given that the surrounding property was residential. Rezoning would have resulted in a commercial island in a residential neighborhood. *Id.* at 698-99, 149 S.E.2d at 249.

In *Par Mar v. City of Parkersburg*, 183 W.Va. 706, 398 S.E.2d 532 (1990), the landowner brought an action seeking a declaratory judgment that a zoning ordinance was unconstitutional as applied to the property due to the ordinance being arbitrary and unreasonable. The property at issue was in a single- and two-family residential zone and was surrounded on three sides by residences. Across the street from the property was a

major road, a heavy manufacturing zone, and a recreational zone. The landowner unsuccessfully sought a permit from the City to operate a convenience store, including retail gasoline sales. The Court applied the principles announced in *Carter, see* 132 W.Va. 881, 54 S.E.2d 747, and further articulated these relevant factors:

> In a challenge to the validity of a zoning ordinance as applied to the property in question, the relevant factors include the following: (1) existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of the plaintiffs promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public, as compared to the hardship imposed on the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in the area in the vicinity of the property.

*Par Mar*, 183 W.Va. at 710, 398 S.E.2d at 536 (citing *LaSalle Nat'l Bank v. Cty. of Cook*, 208 N.E.2d 430, 436 (Ill. App. Ct. 1965)). However, the Court proceeded to conclude that the trial court properly granted a motion to dismiss due to the failure of the landowner to set forth any factual allegations supporting the claim that the zoning ordinance was arbitrary and unreasonable as applied to its property. *Par Mar*, 183 W.Va. at 712, 398 S.E.2d at 538.

With the foregoing statutory overview of comprehensive planning and zoning, together with the principles of substantive law in mind, we now address the two assignments of error briefed by the City.

21

The City's first assignment of error consists of two parts. First, the City argues that the circuit court erred in failing to apply the fairly debatable standard in evaluating the Church's challenge of the zoning ordinance as applied to the Partition. It is asserted that the court improperly discounted various factors supporting the residential zoning classification including the historical uses of the neighborhood, recent residential development, the community planning process and the Comprehensive Plan which supports preserving residential uses.

In response, the Church argues that the court applied the proper fairly debatable standard and weighed the evidence under the correct substantive due process standards. The Church points out that the circuit court cited to and applied the leading decisions under West Virginia and federal law including *Carter*, 132 W.Va. 881, 54 S.E.2d 747 and *Village of Euclid v. Ambler Realty Co*., 272 U.S. 365 (1926) (holding that local governments have a right to zone as an exercise of police power and adopting the fairly debatable standard of judicial intervention in zoning matters).

While the circuit court did not explicitly use the term "fairly debatable" in its amended order, the court did cite to, rely upon, and apply the analysis dictated by the fairly debatable standard. *See Par Mar*, 183 W.Va. at 710, 398 S.E.2d at 536; *see also Carter*, 132 W.Va. 881, 54 S.E.2d 747; *Village of Euclid*, 272 U.S. 365. The court also identified and discussed in some detail the testimony of each of the witnesses and the evidence of record regarding the Partition and the surrounding uses of property in the neighborhood.

22

Thus, we find it of no moment that the words "fairly debatable" do not appear in the amended order because the court applied the appropriate fairly debatable standard in evaluating the challenge to the application of the zoning ordinance. Consequently, the circuit court did not err.

Next, the City asserts that the circuit court erred by invalidating the zoning ordinance as a violation of substantive due process without considering all appropriate factors and without evaluating the evidence supporting the zoning ordinance under those factors. In part, the City claims that the court evaluated the evidence only on the limited basis of the six factors set forth in *Par Mar*, 183 W.Va. 706, 398 S.E.2d 532, when it should have considered additional factors regarding comprehensive planning. Further, the City argues that the court's citation to the city planner's testimony that the City's Comprehensive Plan is not law demonstrates the court's disregard for the factors regarding comprehensive planning.

In opposition, the Church contends that the circuit court applied the correct substantive due process standard including application of the six factors. *See id*. The court identified and described the facts surrounding the Partition and the neighborhood in reaching the conclusion that the zoning classification was arbitrary and unreasonable as applied to the Partition.

While the Court in *Par Mar* identified six factors for analysis as borrowed from Illinois in *La Salle National Bank*, it did not explicitly adopt the factors. *See id.* (citing *LaSalle Nat'l Bank*, 208 N.E.2d at 436). Nor did the Court, in *Par Mar*, apply the factors to the ordinance and particular property at issue because the challenge to the zoning ordinance was dismissed on procedural grounds.

The City acknowledges the application of the *Par Mar* factors, but advocates for the addition of other factors including a consideration of whether the challenged zoning decision is in harmony with the City's Comprehensive Plan. We agree that some consideration of a comprehensive plan is appropriate when deciding a challenge to a zoning decision. Our well-settled law holds that "[a] zoning ordinance is not invalid as to a particular property owner where such property owner is not treated differently from other property owners and the ordinance *bears a substantial relation to the health, safety, morals and general welfare of the people . . . .*" *Anderson*, 150 W.Va. at 689, 149 S.E.2d at 244-45, syl. pt. 1, in part (emphasis added). While a comprehensive plan itself is not the binding zoning law, it was developed with citizen input and was formally adopted by the governing body of the municipality or county. *See* W. Va. Code § 8A-3-1 (2004). The goal of a comprehensive plan is to "promote the health, safety, morals, order, convenience, prosperity and general welfare of the inhabitants, as well as efficiency and economy in the process of development." *Id.* at § 8A-3-1(c). As such, the consideration of a comprehensive plan can assist a court in undertaking the analysis required by *Anderson*.

24

However, the City's arguments in this case suggest that the Comprehensive Plan should be the paramount consideration in a zoning challenge. We reject that notion. The City's arguments would usurp any substantive review of whether the ordinance, as applied, treats the property owner differently from other property owners. *See Anderson*, 150 W.Va. at 689, 149 S.E.2d at 244-45, syl. pt. 1. The consideration of the comprehensive plan is but one factor.

Based upon the parties' arguments, we now find it necessary to adopt the factors in *Par Mar* with the addition of a factor requiring the consideration of an adopted comprehensive plan. *See* 183 W.Va. at 710, 398 S.E.2d at 536. This Court hereby holds that in a challenge to the validity of a zoning ordinance as applied to a particular piece of property the relevant factors to be considered by a circuit court include the following: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of the plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public, as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; (6) the length of time the property has been vacant as zoned, considered in the context of land development in the area in the vicinity of the property; and (7) the adopted comprehensive plan.

The City argues that proper evaluation of the factors compels the conclusion that the zoning classification of the Partition should remain R-1 Single-Family. On the other hand, the Church submits that consideration of the record in light of the factors dictates a finding that the refusal to rezone the Partition as B-2 Service Business was arbitrary and unreasonable.

Our de novo review considers these factors and applies an overall fairly debatable standard. First, as to the existing uses and zoning of nearby property, the evidence demonstrates that the adjacent property to the west consists of a commercial development with three buildings situated in a horseshoe pattern and zoned B-2 Service Business district. To the east is the Church building and its parking lot which is zoned R-1 Single-Family Residential, for which churches have special use permits in R-1. To the east of the Church is Eastern Avenue and an older residential area. To the south of the Partition is Burroughs Street. Diagonally adjacent to the Partition and across Burroughs Street is the commercial establishment known as The Wine Bar which is zoned B-2 Service Business district. Next to The Wine Bar and extending to the intersection of Burroughs Street and Collins Ferry Road is a multi-family development. To the north of the Partition is a buffer area and a residential subdivision accessible from Eastern Avenue. Thus, the area surrounding the wedged Partition has uses and zoning that are considerably commercial in nature.

The second factor requires us to consider the extent to which the value of the Partition is diminished by the residential zoning restriction. The record is plain that there is a substantial diminution of value. The testimony of the Church's appraiser established that as commercial usage the Partition had a value of $268,000 that was depressed to a value of $128,000 as residential property. The appraiser also testified that the Partition had limitations with respect to its desirability as a residential parcel.

The third factor demands balancing the diminution of property value against the promotion of the health, safety, morals or general welfare of the public. This Court recognizes the value of neighborhood conservation and limited growth areas as promoted by the City in the Comprehensive Plan. However, a bird's eye view of the Partition plainly demonstrates that commercial development of the Partition would not subvert the health, safety, morals or general welfare of the public.

Fourth, this Court must balance the relative public gain from the zoning classification against the harm to the Church. The evidence is that the Church suffers a more than fifty percent diminution in value and is deprived of the highest and best use of the Partition if it is restricted to the residential classification. The City gains the outside possibility of a residential housing unit and the avoidance of another business with the lighting, traffic, quiet, and privacy issues attendant to commercial development. Inasmuch as the character of the Partition is such that it is wedged between commercial development

and the Church and has other commercial development nearby, we find that the balance tips in favor of the Church.

Fifth, we must consider the suitability of the Partition for the zoned purposes. The Partition is unimproved. It has several unfavorable qualities that make it unsuitable for residential purposes, including its wedged location, its access onto busy Burroughs Street, and its slope.

Sixth, we consider how long the Partition has been vacant in the context of the surrounding land development. The Partition was previously a sloped portion of the Church property. It did not include any portion of the Church parking lot. It currently remains vacant and unimproved. Given the surrounding land development, it is likely that it will continue to be vacant if the zoning classification remains residential. Additionally, the Church's agreement for sale with Mr. Bossio for purposes of commercial development will be frustrated.

Based upon the foregoing and the unique facts regarding the Partition and the nearby property uses and zoning, we find that it is not fairly debatable that this wedged -in Partition should be rezoned as B-2 Service Business district. The failure to do so was an arbitrary and unreasonable application of the zoning ordinances to the Partition. We come to this conclusion, mindful that the existence of a commercial use adjacent to a residential neighborhood is not a sufficient reason to invalidate a zoning decision of a local

authority.  *Par Mar*, 183 W. Va. 711-12, 398 S.E. 2d 537-38.  We further recognize that "[a] zoning ordinance must draw lines for boundaries between zoning districts, and such line drawing, such as utilizing a highway or a street as a boundary, is not *ipso facto* 'arbitrary and unreasonable' so as to invalidate the application of a zoning ordinance." *Id*. at 707, 398 S.E.2d at 533, Syl. Pt. 3.  Here, the line drawing is in the middle of a block and mixed uses of property abound in the immediate area.

In its second assignment of error, the City contends that the consideration by the circuit court of the past zoning decisions by the City were in error and factually incorrect.  Specifically, the City argues that it was error to rely upon prior zoning decisions regarding The Wine Bar and the Burroughs Development because those decisions were made prior to the 2013 adoption of the Comprehensive Plan and are therefore irrelevant.  Additionally, the 2003 rezoning of the Burroughs Development was undertaken for the purpose of correcting a mapping error.

In contrast, the Church argues that The Wine Bar and the Burroughs Development, considered in connection with their commercial classification, reflect the development taking place at street level.  The existence of the Comprehensive Plan does not diminish the current conditions and character of the area surrounding the Partition.

Given the particular facts of the instant matter, we find that considering the past zoning decisions was a relevant factor involving the evaluation of the existing uses

29

and zoning of nearby property as necessary under our multi-factor analysis. We observe that the Court in *Anderson*, 150 W.Va. 689, 149 S.E.2d 243, considered the prior zoning and rezoning actions of the municipality. It is not significant that the 2003 proceedings regarding the Burroughs Development were to address a mapping error. The reality is that it is an immediately adjacent commercially developed property. The various reports of the City Planning staff indicating that the Burroughs Place and The Wine Bar parcels were not likely to be suitable for residential purposes and otherwise remarking on the nature of the area are relevant factors considering the commercial development that took place. The statements tend to show that the Church is being treated differently than other property owners when it is seeking a proposed use that is not inconsistent with uses and results already present in the area. In terms of this particular wedged piece of property, the Church is not endeavoring to fundamentally change uses and cause confusion with respect to how property is in fact being used in the existing zoned areas.

Based upon the foregoing, we conclude that the amended order of the circuit court declaring the zoning enforcement action unconstitutional and ordering the City to cure the classification error by amending the classification of the Partition from R-1 Single-Family Residential to B-2 Service Business district was proper.

## IV.  CONCLUSION

For the reasons stated above, the November 26, 2018, amended order of the Circuit Court of Monongalia County, West Virginia, in the above-styled matter is therefore affirmed.

Affirmed.